## PENNINGTON and KEAN vs. TOWNSEND.

An *incorporated banking company*, whose charter is granted by a *sister state*, is within the operation of the *restraining act* of this state, forbidding all persons, associations and bodies corporate from carrying on banking business, *unless thereunto specially authorized by law.*

Where a foreign incorporated banking company violated this act, and brought an action to recover the amount of a check discounted by them, *it was held* that they were not entitled to recover.

A contract founded upon an unlawful act, whether it be *malum prohibitum* or *malum in se*, cannot be enforced by action.

ERROR from the New-York common pleas. The plaintiffs declared as the holders of a check, dated the 19th November, 1825, for $200, drawn by the defendant on the Dutches County Insurance Company, payable to Joseph F. White or bearer; the declaration also contained the common money counts. The drawing of the *check*, its presentment and dishonor were admitted. The *payee* of the check, called as a witness by the defendant, testified that it was lent to him by the defendant for his accommodation, (the defendant having received no consideration for it,) on the *twelfth* day of November, 1825, although dated as of the *nineteenth* of that month; that on the day he received the check, he procured it to be discounted by *The New-Jersey Protection and Lombard Bank*, at an office in Pine-street in the city of New-York, where the president and one or two clerks of that bank attended; that he received the *bills of that bank* in payment, and promised when the check became due, to give in exchange for the bills received by him, current bank bills of the city; that he also deposited as collateral security his own check, which is now held by the plaintiffs. On the eighteenth of November, 1825, the bank stopped payment, the witness then holding their bills to an amount exceeding the check in question. Another witness testified that in the year 1825, up to the time of the failure of the bank, he had extensive dealings with it in the way of discount and deposit, which were transacted with the officers of the bank at their office in Pine-street in the city of New-York, where he made

deposits, had notes discounted, presented checks, and received payment in the bills of the bank, and never went, or had occasion to go to New-Jersey to transact business with the bank; the office in Pine-street appeared to be an office established for the transaction of the business of the bank. The plaintiffs gave in evidence the act of the legislature of the state of New-Jersey incorporating the Protection and Lombard Bank for the term of 21 years, locating it at either the City of Jersey or Hoboken, but reserving the power to *repeal* the same, this act was passed the 29th December, 1824. They also gave in evidence another act of the legislature of that state, passed the 23d November, 1825, *repealing* the act of incorporation, and appointing the plaintiffs *trustees* of all and singular the effects of the bank, and authorizing them to convert the same into money for the benefit of the *creditors* of the bank; and also another act of the same legislature, passed the 8th December, 1825, defining and extending the powers of the trustees. The judge charged the jury, that by an act of the legislature of this state, it was not lawful for any person or association of persons to keep an office of deposit for the purpose of discounting promissory notes, or for carrying on any kind of banking business or operations which banks are authorized by law to do, or to issue any bills or promissory notes as private bankers, unless authorized by law; that if they did so, such conduct was unlawful, and a contract arising out of such transactions, necessarily could not be enforced in any of the courts of this state; that to allow such contract to be enforced, would be against the object and policy of the act. He further charged them, that it would be for them to determine whether the office spoken of by the witnesses was such office as was forbidden by the act, and whether the check of the defendant was discounted there, and payment thereof received in the bills of the bank, as a banking operation. The plaintiffs excepted to the charge, and the jury found a verdict for the defendant, on which judgment was entered. The plaintiffs sued out a writ of error.

NEW-YORK,
May, 1831.

Pennington
v.
Townsend.

NEW-YORK,
May, 1831.

Pennington
v.
Townsend.

*C. L. Livingston, J. Blunt & P. A. Jay*, for the plaintiffs in error.*

*W. T McCoun*, for defendant in error.

*By the Court*, NELSON, J. I am of opinion the charge of the court below to the jury was unexceptionable, and their verdict fully warranted by the proof. The law of 21st April, 1818, forbids any person, or association of persons, or body corporate, to keep an office of deposit for the purpose of discounting promissory notes, or for carrying on any kind of

---

*The *restraining acts*, by the operation of which the plaintiffs below were defeated in their action, are the following : First, An act passed the 6th April, 1813, 2 R. L. 234, which *enacts* that *no person unauthorized by law*, shall become a *member of any association* for the purpose of issuing notes, &c. or transacting any other business, which incorporated banks may or do transact, by virtue of their respective acts of incorporation ; *imposes* a penalty of $1000, and *declares* all notes, &c. *given to such association* null and void ; and second, An act passed April 21, 1818, Laws of 1818, p. 242, which enacts that it shall not be lawful for any person, association of persons or body corporate to keep *any office of deposit* for the purpose of discounting promissory notes, or for carrying on any kind of banking business or operations which *incorporated banks* are authorized by law to carry on, or *issue any bills or promissory notes as private bankers* unless thereunto specially authorized by law, with a *proviso*, that nothing in the act contained shall be deemed or construed to abridge, enlarge or in any way affect any rights theretofore granted by law to any *incorporated company*. The second section of this act *enacts*, that in case any person or persons, or body corporate, shall contravene the act, every such person or persons, and the members of every such corporation who shall either directly or indirectly assent thereto, shall for every offence forfeit the sum of $1000, to be sued for, &c. In this act there is no clause declaring *void* the *sureties* taken.

The counsel for the plaintiffs in error insisted that those acts of our legislature could have no operation upon *banking incorporations* granted in other states who chose to carry on business in this state ; but the learned and ingenious arguments of the counsel are not given, as this question most probably will not arise again in this state in consequence of the provisions of the *revised statutes*, by which it is enacted that " where, by the laws of this state, any act is *forbidden* to be done by any corporation, or by any association of individuals, *without express authority by law*, and such act shall have been done by a *foreign corporation*, (such corporation) shall not be authorized to maintain any action founded upon such act, or upon any liability or obligation, express or implied, arising out of, or made or entered into in consideration of such act." 2 R. S. 457, § 2.

banking business, or operations ; or to issue any bills or pro- NEW-YORK,
missory notes, as private bankers, unless authorized by law. May,1831

Now the evidence proves, that the entire business of this Pennington
institution, which was incorporated by the legislature of New- v.
Jersey on the 29th December, 1824, was transacted at an of- Townsend.
fice of discount and deposit established in the city of New-
York, until their operations were closed by a repeal of their
charter on the 23rd November, 1825. The president, cash-
ier, and clerks of the bank attended at that office ; there de-
posits were made, notes discounted, and among others, the
check in question for the paper of the same—all an express
violation of the several provisions of the restraining act of
1818, unless the fact of the bank being incorporated by the
legislature of New-Jersey is to be deemed an authority to car-
ry on banking operations here. This ground has been taken
by the counsel for the plaintiffs, to take it out of the restrain-
ing act ; but I cannot believe it necessary to enter into an
argument to show the unsoundness of the position. Yielding
to the legislature of New-Jersey the powers claimed under this
corporation, to wit, that this bank be put upon the same foot-
ing in conducting their banking operations as our own banks,
would be surrendering at once to them a power to make laws
co-extensive with our own legislature ; for the position involves
a principle of this extent. It would also be very extraordinary,
if a statute in derogation of the common law rights of the
citizens of this state, enacted for the public good, should be
inoperative, when the inhibited acts were done by citizens of
another state ; for I am bound to presume this corporation was
granted to citizens of New-Jersey. The protection against
the evil intended to be remedied, to wit, preventing banking
without the authority of the legislature of this state, is univer-
sal in its application within the state, and without exception,
unless qualified by the same power which enacted it, or by
some other paramount law. Such is not the law incorporat-
ing this bank.

Nor can I assent to the proposition that the injunction of
the 4th article, section 1, of the constitution of the United
States, imposes upon the judicial tribunals of the states to go
this length in giving full faith and credit to the public acts,

&c. of a sister state. The recognition of foreign corporations in courts of justice, when pursuing their legal rights in them, rests upon principles very different from, and not analogous to that contended for. The right to the remedy is one thing, and to recover another. The right to sue in the common pleas in the city of New-York is no part of the objection of the defendant to the recovery. I can view this transaction in no other light than that of an association of persons keeping an office of discount and deposit, issuing paper, and carrying on banking business in this state, without any authority of law, and against the express provisions of the restraining act.

But it is said that the incurring the penalty of $1000 is the only consequence of a violation of the restraining act of 1818, and that the *contract* may be enforced as valid ; that the transaction is only *malum prohibitum*, and not *malum in se*, and that the former differs from the lattter in this, that the penalty is the only punishment or consequence. Castle's case, Cro. Jac. 644, and *Rex* v. *Wright*, 1 Bur. 543, cited in support of this doctrine, are not authorities to the extent claimed ; they establish the position, that where a new offence is created by statute, and a penalty affixed, the *punishment* for an infraction of the law can only be in the mode prescribed. The same principle is recognized in the 2 R. S. 696, § 39. Giving full effect to this principle, the civil rights and remedies arising out of the inhibited acts are left untouched, and I apprehend it will be found that so far as these are concerned, there is no distinction between an act *malum prohibitum* and *malum in se*. Both are equally forbidden, and unlawful ; and I will add, both are immoral, and cannot be the foundation of a civil right that will be enforced in a court of justice. 14 Johns. R. 273. In *Thalhimer* v. *Brinkerhoof*, 20 Johns. R. 397, Ch. J. Spencer says : "It is a fundamental rule, that all contracts which have for their object any thing repugnant to the general policy of the law, or contrary to the provisions of a statute, are void ; for it is a rule as well in law as in equity, *ex turpi contractu actio non oritur.*" In the same case, Mr. Justice Woodworth says : " An agreement expressly prohibited by statute, must necessarily be considered inoperative and void. It will not be seriously urged, that the party is subject to the penalty

only, and that the courts are bound to consider the contract legal and valid." The principle had before been avowed, and frequently enforced, that an action in affirmance of an illegal contract, the object of which was to enforce the performance of an engagement prohibited by law, could in no case be maintained. The question has been recently fully examined by the supreme court of the United States, *Bank of U. S.* v. *Owen*, 2 Peters, 527, and in which the distinction urged by the plaintiffs, so far as civil rights and remedies are concerned, is repudiated as unsound.

It is said, if the security should be declared void, still the plaintiffs are entitled to recover the money loaned, under the common counts. Whether this principle is applicable at all to this case, I will not stop to enquire, for there is no pretence for its application to this defendant, in as much as no money was ever loaned by the plaintiffs to him. *Utica Ins. Co.* v. *Cadwell*, 3 Wendell, 302.

Judgment affirmed.