1839.

COWMAN v. SEDGWICK.

THE court will decree the delivery up of a note given as a security
on a usurious loan, and retained by a broker as security for usu-
rious interest paid by him and for his commissions in effecting
the loan, the principal and legal interest having been paid. The
general doctrine of the court, that it will not aid either party in
executing an illegal contract, or enforce any claim which depends
upon or results from it, is applicable as well to a contract in vio-
lation of a positive statute, as to one immoral in itself. The
court actively interposes where the transaction is as it were in
transitu, as where money is deposited with a stakeholder upon
gambling transactions.

The principle of entire neutrality as to illegal transactions deviated
from in some cases, such as in marriage brokage bonds, and cases
of usury. Relief has here been given from an early period.

Principles settled under the Revised Statutes as to dealing with
an usurious contract in this court.

THE cause was submitted on written arguments; the
facts of the case are fully stated in the opinion of the court.

June 6.
July 1.

*Mr. Graham,* for complainant.

*Mr. Ullman,* for defendants.

THE ASSISTANT VICE-CHANCELLOR:—The bill in this
cause was filed to compel the delivery of a promissory note
for $2,553 59, placed in the hands of the defendant under
these circumstances:—The defendant was a money broker
or lender, and the complainant, through his agent Gillen-
der, applied to him on the 9th of April, 1836, for a loan of
$5,000, proposing to deposite as security certain promis-
sory notes. An agreement was made of that date, and the
note in question, drawn by the complainant, and endorsed
by Gillender, was with other notes deposited.

The first difference between the bill and the answer to
be noticed is, that in the former it is alleged, that the com-
plainant always dealt with the defendant as principal, and
not as agent. The answer avers that Gillender employed
the defendant as his agent to procure the loan. This

might be of consequence upon the question of commissions.

The next diversity is, that the bill states the agreement to have been for interest at the rate of $1 25 for each $1,000 per day for certain portions of the advance, and $1 50 for other portions. The answer avers, that Gillender authorized him to procure the loan at the best rate, and upon the best terms, at which the same could be procured, and to pay for the use of the same at the current price for the use of money at the time ; that no limit was prescribed as to the rate of interest to be allowed for the money ; but a full authority was given to procure it according to his best judgment. The defendant states the rate of interest at which he obtained the money, being $1 50 and $2 a day per $1,000 for different amounts.

So far I consider the answer as responsive to the bill, and establishing, as far as bill and answer are concerned, the authority to borrow at these rates, and that the defendant was an agent.

Then as to the proof, I cannot see how the objection to the competency of Gillender as a witness is removed. He was the endorser of the note in question, and his testimony shows a direct interest, as the money was chiefly for his own use. The omission to give notice of the dishonor of the note, does not discharge him under the circumstances detailed. (17 *Wendell*, 94.) His deposition may be used in order to establish his interest, or if his testimony is not looked to for any purpose whatever, then the omission of protest does not appear, and the notice of protest may be presumed. The note is in evidence ; and from the testimony of Gibson and Henry was collected at the bank for the use of the former, who had deposited it.

The evidence so far supports the answer as to show that the money was obtained from another. But in my view of the cause, it is unimportant whether the fact is as stated in the answer, or as is deposed to by Gillender. In the one case the question is, as to a right to retain the note for a balance of interest and for brokerage ; in the other, the note is demanded because the debt has been fully paid

according to the term of the contract. But in both, the note was delivered for the purpose of raising money upon usury; was employed to effect that purpose, and the point as to the interposition of this court seems to me the same, whether the money advanced has been fully discharged or not.

The case has been argued by the counsel for the defendant—*first*, upon the rule of the court, that where the parties before it are equally culpable the court will not interpose at all; *and next* that the broker might recover his commissions or money paid. The complainant's counsel take the ground that as a broker he could not sustain an action for the brokerage, nor as lender for the usury; and that it follows from the contract being null that the security should be surrendered.

The general law of the court is settled by an irresistible strength of authority, that it will not lend its aid in any form, or to either party, to carry into execution an illegal contract; or to declare any right or enforce any relief, which depends upon or results from it. ( *Weaver* v. *Whitney, Hopkins*, 12. *Alley* v. *Broune*, 1 *Ball & Beat.* 360. *Ex parte Mather*, 3 *Vesey*, 373.)

And I also conceive, that the distinction raised in some cases between the subject of a contract being immoral in itself, or one only prohibited by statute for reasons of public policy, is now abolished. (*Hennington* v. *Duchastel*, 2 *Swanston*, 162 *n.* *Cannan* v. *Bryce*, 3 *Barn. & Ald.* 197. *Aubert* v. *Maze*, 2 *Bos. & Pull.* 371. *Pennington* v. *Townsend*, 7 *Wendell*, 280.)

There is a distinct class of cases where the transaction is yet as it were *in transitu*, in which the rescission of the contract may be obtained both at law and in equity. Such was the case of *Gram* v. *Stebbins*, (6 *Paige*, 124,) noticed by the defendant's counsel, and the cases in which money deposited with a stakeholder upon gambling transactions has been recovered back; ( *Tuppenden* v. *Randall*, 2 *Bos. & Pull*, 467,) and upon this ground the decision of Sir Thomas Plumer, in *Cecil* v. *Butcher*, (2 *Jac. & Walk.* 565,)

was placed. The act was unfinished, and there was yet a *locus penitentiæ.*

A series of cases under the English Game Laws will illustrate the doctrine of the court upon this subject. (*Brackenburry* v. *Brackenburry*, 2 *Jac. & Walk.* 393. *Roberts* v. *Roberts*, 1 *Daniel's Reports*, 143. *Cecil* v. *Butcher*, 2 *Jac. & Walk.* 565.) The case of *Roberts* v. *Roberts* is instructive. The devisees of G. R. filed a bill to set aside a conveyance, and to have it delivered up and for a re-conveyance, on the ground that it had been executed by G. R. to his brother, in order to qualify him to kill game.

The deed was delivered, but no possession taken under it; the deviser continuing to take the rents and profits. The grantee had commenced an action of ejectment. The Chief Baron held, that the court could give no relief; that the object of the conveyance was a fraud on the law, and that the plaintiff could not come into a court of equity for a reconveyance. The bill was retained, that the party might proceed upon the ejectment.

Upon the trial at law, (2 *Barn. & Ald.* 565,) the judge admitted the evidence, and held the deed void, and that the plaintiff could not recover. A rule for a new trial was made absolute; the court of king's bench holding, that though the deed was void, the defendant was party to the violation of the law, and could not set up his own culpability in defence of the action; and hence the plaintiff at law, the grantee in the deed, should recover.

No case can be stronger than this to exemplify the neutrality of a court of equity, in relation to an illegal contract. The court of exchequer would not direct the delivery of the deed. But what doctrine does the decision of the court of king's bench imply? It would not admit the defendant in the ejectment to allege illegality, to avoid a deed, to which he, or rather his devisor, was a party, and permitted the plaintiff to recover. Now, if the case had been placed solely on the ground, that as a point of evidence, no proof of the alleged object should be admitted, the decision might have been consistent with the

principle of the court of exchequer. But it was not so, except slightly by Best, J., who said parol proof to avoid a deed, could only be of fraud, and a party to the deed could not introduce it. The point decided was, that though the deed was void, the defendant, a party to the illegality, could not set up such a defence. So, in *Montefiori* v. *Montefiori*, (1 *Black.* 363,) relied upon by the court of king's bench, where the plaintiff was engaged in a marriage treaty, the defendant gave him a promissory note, with a view to enable him to appear as a rich man, nothing being due. A suit to recover upon the note was sustained, the court saying that no man should set up his own iniquity as a defence, any more than as a cause of action.

Now in these and some other cases, not only was the principle of neutrality abandoned, but an illegal contract was actually carried into full effect, in favor of one of the parties to it. Let us compare the decision of Lord Mansfield, with the doctrine of the court of chancery, upon the subject of marriage brokage bonds. Ever since the reign of James the 1st, equity has decreed the cancelment of such bonds. (*Tothill's Transactions*, p. 27. *Arleston* v. *Kent. Patten* v. *Hall*, cited 3 *P. Wms.* 391. *Smith* v. *Binning*, 2 *Vernon*, 392.) Thus we find the court of king's bench giving full effect to such a bond, and the court of chancery entirely destroying it.

Again, in the leading case of *Collins* v. *Blantem*, (2 *Wilson*, 341,) in an action upon a bond, given for compromising a prosecution for perjury, the court allowed the consideration to be inquired into, and defeated the action. Here was a sealed instrument, as in *Roberts* v. *Roberts* in the king's bench. I can find no difference, except as to the nature of the offence, and I am wholly unable to see the principle upon which that difference justifies a distinction. While I believe the decisions of the courts of equity upon this subject are less inconsistent than those at law, it is impossible not to perceive, that the distinction between cases in which neutrality will be observed, and in which a cancelment of the contract will be decreed, is often very

shadowy. There are, however, a few decisions, in which the principle of entire passiveness has been rejected, not for the purpose of enforcing the contract, but of rescinding it, overthrowing all its consequences, and restoring the parties to their original situation. Lord Thurlow declared his opinion, (*Neville* v. *Wilkinson*, 1 *Br. C. R.* 547,) " that in all cases where money was paid for an unlawful " purpose, it may be recovered back; and the reason was, " if courts of justice mean to prevent the perpetration of " crime, it must be, not by allowing a man who has got " possession, to remain in possession, but by putting the " parties back to the state in which they were before." See also the cases cited by him. It may well deserve consideration as a question of legal ethics, which rule is the wisest and the best,—whether to annul every act done in pursuance of an illegal contract, and to make a perfect restitution of the parties to their former situation, or to observe an absolute neutrality, and withhold the power of courts, either in prosecution or defence. In the latter case, a reward is bestowed upon the able or the cunning, the vigilant or the daring: possession becomes the criterion of right. In the former, the law inculcates the lesson, that the best plans of subtlety will be defeated, the fruits of the deepest wiles be withdrawn, and that it will make level the guilt of folly and the guilt of talent. I find, however, the rule otherwise established in the court of equity; and this is sustained by the civil law. *Ubi dantis et accipentis turpidudo versatur non posse repeti dicimus, veluti si pecunia detur ut male judicaretur.* (*Lib.* 3, *De Con ob turp. vel inj. Caus.*) It may be observed, that in relation to all the parts of a contract yet unperformed, neutrality is equivalent to rescission. But the principle of Lord Thurlow goes further, and would enforce an entire restitution.

In the question now considered, it is not necessary to advert to that class of cases, in which relief is given for the sake of the public, not of the party, although he reap the benefit. (*Moris* v. *McCulloch*, 2 *Eden*, 192, and note. *Shepwith* v. *Strother*, 3 *Randolph*, 214.)

The rule as established would, in my opinion, justify

1839.

Cowman
*v.*
Sedgwick.

the dismissal of the bill, but for a distinction which has long prevailed between contracts within the prohibition of the statute of usury, and other illegal contracts. Some doubts arose in early cases, whether a usurious excess once paid, could be recovered back at law. ( *Tomkins* v. *Barret*, 1 *Salk.* 22. *Skinner*, 411. *Bosanquet* v. *Dashwood, Ca. Temp. Talbot*, 40.) It is now fully established that it can be. But relief in the court was always given under certain regulations. If the money had been paid, the excess might be recovered ; if unpaid, the securities were to stand for principal and legal interest alone. ( *Bosanquet* v. *Dashwood, Ca. Temp. Talbot*, 38. *More* v *Battie*, 1 *Eden*, 273. *Scott* v. *Nesbitt*, 2 *Br. C. R.* 641. 2 *Cox*, 183. *Dey* v. *Dunham*, 2 *Johns. Ch. R.* 182. *McCampbell* v. *Gill*, 4. *J. J. Marshall*, 88. *Brown* v. *Swain*, 10 *Peters*, 497.)

But in giving this relief, the court imposed the conditions of payment of the sum legally due, and it adhered to its settled doctrine, that its aid could not be given, to compel a discovery of the usury by the defendant, through which a forfeiture or a penalty would be incurred, although if the period for suing for the penalty had elapsed, that formed no defence where the true amount was offered.

Such was the law previous to the Revised Statutes of 1830 ; changes were then made by express provisions. In the case of *Livingston* v. *Harris*, (3 *Paige*, 528, *and in error*, 11 *Wendell*,) these alterations are thoroughly examined, and the result is this. That upon a bill filed for the discovery of alleged usury, although the complainant need not pay nor offer to pay the interest, he must offer to pay the principal. That where a party is driven to this court to obtain relief upon an usurious contract, where the form of the security (as by a bond and judgment) precludes a defence at law, then, being able to prove the usury without a discovery, no payment of the money loaned shall be required. But where the defence of usury can be made out at law by other evidence, no bill shall be allowed in this court for relief or discovery, or only on equitable terms : a demurrer will be sustained.

To apply this principle to the present case, an answer on oath is called for in the bill. Instead of demurring, the defendant sets forth a case of usury, making it only more excessive than the bill alleged. No offer is made to pay the principal; but it is plain, upon the answer, that the principal and lawful interest, has been more than paid. No objection of there being a competent jurisdiction at law, is raised by the answer. It is too late, now, to make it. (*Grandin* v. *Le Roy*, 2 *Paige*, 509.)

Thus the case is narrowed down to this,—whether the court will decree the delivery of a note given as a security on an usurious loan, and retained by a broker for usurious interest paid by him, and for his commissions in effecting the illegal contract, the principal and legal interest being fully paid. It is undeniable, that if there had been any thing lawfully due for principal, the bill might have been sustained upon tendering it, and the securities cancelled. I see no distinction where the whole principal has been paid, and the defendant has submitted to the jurisdiction. I think the court has this power, independently of the act of May 15, 1837. It might have been, that had the complainant sought re-payment of the excess of interest, he could have recovered, the defendant not having set up the limitation in the statute in bar. (1 *R. S.* 760, § 34. *Doy* v. *Dunham*, 2 *Johns. C. R.* 191.) As the claim has not been made in the bill, I shall not extend the prayer for general relief to cover it.

An objection is made, that Gillender ought to have been made a party. I do not think this tenable. There is nothing in the case to show, that a claim upon the note could exist against Gillender, different from that against the complainant.

The decree must be for the delivery of the note in question to the complainant, each party to bear his own costs.