By the Court.
Bosworth, J.
The plaintiff advanced his money to the defendant, to indemnify him against any losses he might incur by reason of making, or having made, contracts for the sale of two hundred shares of Canton stock. The obvious purpose of the advance was to furnish moneys, with which the defendants might pay the amount of any increase there might be in the value of the stock on the day for the delivery of it, above the contract price of $66 per share. The plaintiff did not own any stock at the time he authorized the contract to be made, nor at the time he was notified that the contracts had been made, nor within thirty days thereafter. The only inference is, that he employed the defendant to make a contract, which is declared void by statute. If it was intended that the defendant should contract in the plaintiff’s name, as principal, then he employed the defendant to make a contract, falling within the express words of the statute, in relation to stock jobbing, 1 R. S. 710, § 6.
It was probably intended that the defendant should contract it in his own name, without disclosing his principal. If this was not intended, the deposit of the $750, as an indemnity against the consequences of contracting, would»be an idle ceremony. For if it was intended that the defendant should expressly contract, as agent, in behalf of the plaintiff, as principal, no indemnity would be wanted, as the defendant could not then in any event be subjected to liability, or loss, by reason of making the contract, whether the transaction was lawful or unlawful. A contract on time for the sale of stock, made through the medium of a broker, where the name of the principal is not disclosed, *416 is as much within the mischief of the statute, as if made by the principal personally in his own name. (6 Paige, 124, Gram v. Stebbins and Stebbins; 2 Hall, 162, J. & W. G. Ward v. Van Duzer.)
The defendant did not own any stock, when he made the contracts. The contracts were therefore void, whether regarded as his contracts or those of the plaintiff. The answer and complaint severally aver that the contracts were made by the defendant, on account of the plaintiff.
The money advanced was delivered to the defendant, to secure his aid in furtherance • of an object, repugnant to the express provisions of the statute, and to be put by the latter to an unlawful use, if such use of it should become necessary to save him from loss or damage on his contracts. It was therefore advanced to be used for an illegal purpose, and as an inducement to the defendant, to engage, on the account of the plaintiff, in transactions contravening the policy of a statute law of the state. It is well settled that an act malum prohibitum, or malum in se, cannot be made the foundation of a civil right, which will be enforced in a court of justice. If a person lends money, or sells property to be put to an unlawful use, and if such unlawful use enters into the contract, and is the inducement to the loan -or sale, the lender cannot recover back the money lent, nor the vendor, for the property sold, though not in any other respect, a party to, or connected with, the unlawful action. (5 Denio, 364, Morgan v. Groff; 2 Sand. S. C. R. 146, Bell v. Quin; 7 Wend. 276, Pennington & Kean v. Townsend; 3 Mees. & Wells, 434, McKinnell v. Robinson; Vide Gray v. Hook, 4 Coms. 449.)
The plaintiff cannot recover under § 8 of the statute. That section provides that, “ every person who shall pay and deliver any money, by way of premium or difference, in pursuance of any contract or wager, in the two last sections declared void, may recover such money, &c., of and from the party receiving the same, and his personal representatives.”
This was not paid or delivered as a premium ór difference. It was paid or delivered to indemnify the defendant against the losses to which his contract might subject him. It was not paid either as a premium or difference, in pursuance of the contract *417 of sale which defendant made with Gilbert, Cobb & Johnson, or with Wheelock & Brother. There was never anything paid in pursuance of either of those contracts, as a premium or difference ; there was a literal performance of each of those contracts by a delivery of the stock sold. That section evidently means that where a person sells stock on time, not then being the owner of any, at a stipulated price, and, instead of delivering it, pays the excess of its market value above the contract price, or receives the excess of the contract price above the market value, the party so paying the premium or the difference, may recover back the amount thus paid. The extent of the statutory provisions is simply this: the contract of sale is made void ; it cannot be enforced by either party, neither can recover damages for the breach of it. If, instead of being literally executed, either party, in pursuance of such contract, has paid or delivered money by way of premium or difference, he may recover it back. In this case the defendant, in substance and effect, received the money, to be paid by him by way of premium or difference, if the market value of stock at the period for fulfilling the contracts, should exceed the contract price; this, at all events, is the interpretation of the object of the advance most favorable to the plaintiff, so far as his right to recover under the eighth section is concerned. If it was in fact advanced, or deposited, merely to secure the defendant from loss, by reason of making the contract, without any intention that it should be actually applied in any event, to pay a premium or difference, then the advance or deposit is not such a payment or delivery, as is specified in the eighth section of this act, therefore it cannot be recovered back under that section (5 Denio, 364, Morgan v. Gross). Neither can the plaintiff say that he repented of his intended violation of the statute before it was violated, that he so notified the defendant, revoked the agency, and demanded a return of the money, and that therefore he is entitled to recover it back. The plaintiff cannot recover on such grounds ; even if the law would aid him to recover back the money, on such a state of facts, it is a sufficient answer to say, that such are not the facts of this case.
There is no proof of a revocation of the agency; on the contrary, the contracts were made for the plaintiff’s benefit. He *418 was so notified, and did not dissent ,• no request for a return of the money was made, until after the whole time, allowed for a delivery of the stock, had elapsed. If the locus ■penitentim could continue beyond that period, it would continue until the plaintiff’s claim should be barred by the statute of limitations ; the repentance for which the law gives opportunity to a party is repentance of a purpose to offend against public policy, or to violate the laws, and not of having lost his money ; it must therefore be exercised while a contract is executory, or before the contingent event happens; the happening of the event is the crisis in the contract, which terminates all election, option, or repentance. -If that principle could by any possibility be applied to a case of this character, the rescission of the contract, and demand of a return of the money, should have been made within the thirty days fixed for the delivery of the stock.
What would have been the rights of the parties if it had appeared that the plaintiff, during the thirty days, had notified the defendant not to perform the contracts, and had demanded a return of the money advanced, it is unnecessary, therefore, to discuss, and no opinion is intended to be expressed on that point.
On the case as now presented to the court, the verdict should be set aside, and a judgment of non-suit entered.