## CLANCEY *vs.* THE ONONDAGA FINE SALT MANUFACTURING COMPANY.

Where the business specified in the charter of a corporation is a perfectly legitimate business, and the corporation is legally created, the subsequent abuse or perversion of its corporate powers, though it may furnish a reason why the legislature, or the courts, should amend the charter, and annul the corporation, will not destroy the body corporate. It is still a legal entity, and bound to answer the claims of creditors, although the intention of those who participated in its creation was to effect illegal purposes.

Where the object of a corporation formed under the general act of February 17, 1848, was to fix and control the price of salt, and the mode in which this was to be accomplished was by the manufacturers of salt on the Syracuse reservation leasing to the corporation the salt blocks owned by them, and thus giving control of the quantity and price to the corporation; *Held* that the purposes of the arrangement were in violation of the statute, (*Laws of 1841, ch.* 183, § 16,) and those concerned in it guilty of a misdemeanor.

Where the purposes attempted to be accomplished through a corporation are illegal, contracts and agreements entered into to secure the end must be equally so.

But as it is possible that a party may enter into contracts which may give effect to the illegal purpose, in ignorance of the unlawful design, it is necessary for those assailing such agreements to show that the agreements were entered into with knowledge of the illegal object.

It is not enough to charge parties with notice of the illegal object, that they, or one of them, attended the first meeting of the manufacturers to form a corporation; where the declared object of the corporation was a legal one.

In order to make an agreement, by manufacturers, for the sale of salt to such a corporation illegal, it is necessary that the former should know the illegal purpose for which the corporation was created.

But where, at the time of making such an agreement, the manufacturers knew that the object of it was to increase the price of salt; and that, by the arrangement, they were to receive the benefit of it; *Held* that this fact being known, and the agreement made to carry out the illegal purpose, it was utterly void, and could not be enforced by such manufacturers, or any one deriving title through them.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The plaintiff, as assignee of the firm of Martin Mara & Co., seek to recover the value of 200 barrels of salt, delivered by Mara & Co., to the defendant, in August and

September, 1858. The answer alleges that the salt was delivered by Mara & Co. to the defendant, under certain contracts between Mara & Co. and the defendant, dated April 15, 1858, which are set out in the answer; and it avers that the contracts were entered into in aid of an illegal scheme or combination between the manufacturers of fine salt on the Onondaga reservation, to increase, limit and fix the price of salt, and the amount to be manufactured.

The action was referred to a referee, who found and reported the following facts:

1st. The defendant, during the year 1858, was a corporation organized under an act of the legislature of this State, entitled " An act to authorize the formation of corporations for manufacturing, mining and mechanical purposes," passed February 17, 1848, for the purpose, as stated in the certificate of incorporation, of manufacturing, buying and selling fine salt.

2d. On the 15th day of April, 1858, Martin Mara & Co. leased to the defendant the salt block No. 25, from the first day of May, 1858, to May 1, 1859, and on the same day entered into an agreement with the defendant to manufacture and deposit in bins, all the salt required to be made by the defendant during the salt making season of that year, not less than 15,000 bushels, at and for the price of 16 cents a bushel, payable as fast as the same should be shipped and sold, and realized for by the said company.

3d. There was due to the said Mara & Co., for salt so manufactured for said defendant, upon the 21st day of December, 1858, over and above all payments, the sum of $305.79.

4th. The said firm of Martin Mara & Co. never belonged to the defendant's company, and were not stockholders therein.

5th. The said firm, on the 1st day of April, 1859, as-

signed the said demand to the plaintiff, who now holds and owns the same.

6th. That the said company and corporation was organized in pursuance of a plan adopted by the manufacturers of fine salt, on the Onondaga salt springs reservation, at various meetings of said manufacturers, held at Syracuse, commencing on the 13th day of March, 1858. That the true object, purpose and intent of said pretended organization and corporation, was to enable the manufacturers of fine salt on said reservation, under cover of a corporate organization, to limit and fix the amount of salt to be manufactured on said reservation in 1858, to fix and control the price thereof, and to prevent competition in the sale of salt.

7th. That at the time said corporation was organized, the fine salt manufactured on said reservation was manufactured in about 350 blocks, owned by about 212 individuals; each block being of the value of about $3000, and a very large capital was required to conduct the manufacture aforesaid, the annual product of salt being several millions of bushels.

8th. That an important part of the plan upon which said company was organized, was that each manufacturer should lease to the said corporation the salt block, or blocks, owned by him, and at the same time enter into an agreement with said pretended corporation to manufacture salt for the said corporation in the block or blocks so leased, under certain restrictions contained in said agreement, thereby giving to said corporation the control of the blocks and the salt manufactured in them.

9th. That no part of the capital stock stated in said certificate was ever paid in, and that no certificates of stocks were issued by said corporation to any members thereof. That the provision in relation to stock mentioned in said certificate was inserted merely to meet the requirement of

the statute, and not with the *bona fide* intention to furnish adequate capital to conduct the business contemplated by said corporation.

10th. That the firm, Martin Mara & Co., during the whole of the year 1858 was the owner of the salt block known as No. 25 in Syracuse aforesaid. That a meeting of the manufacturers of salt on said reservation was called for the 13th day of March, 1858, to consider the question of organizing a corporation ; no place was agreed upon at said meeting, there was only talk on the subject of forming a company; that said Mara was present at said meeting ; that after said corporation was organized said firm, Mara & Co., entered into the lease and agreement set out in the complaint with said corporation.

11th. That said Mara & Co. manufactured and delivered, from time to time, to said corporation, in 1858, and under and in pursuance of the lease and agreement aforesaid, salt, and received payment in part, so that on the 20th day of December, 1858, there was, according to the terms of said agreement, due to said Martin Mara & Co., from said corporation, the sum of $305.79.

12th. That the whole number of fine salt manufacturers in 1858, with three or four exceptions, entered into leases and agreements similar to those entered into by said firm of Martin Mara & Co.

13th. That there was another paper signed, besides the lease and agreement, by all the manufacturers agreeing to come in and take stock; that such paper was not signed by Mara & Co.

The referee also found, as matter of law :

1st. That said corporation was organized for an illegal purpose.

2d. That Martin Mara & Co. were not chargeable with the illegal purposes of said company.

3d. That there was due from the defendant to the plaintiff the said sum of $305.79 and interest, amounting in all

to the sum of $352.82, for which sum the plaintiff was entitled to judgment.

*Sedgwick, Andrews & Kennedy*, for the appellant.

I. The statute (2 *R. S.* 691, § 8,) provides "that if two or more parties shall conspire to do any act injurious to trade or commerce, they shall be deemed guilty of a misdemeanor." The act of 1840, (*Laws of* 1841, *ch.* 183, § 16,) declares "that any owner, occupant or person having charge of any manufactory of salt, who shall combine or conspire with, or enter into any combination, arrangement, agreement or understanding, with any person or persons to limit, restrict or fix the time or manner of operating or running such works, or to increase, regulate or fix the price of salt or the amount to be manufactured, shall be deemed guilty of a misdemeanor." The penalty in this statute, implies a prohibition of the act declared to be criminal. Any agreement to do, or in aid of an act prohibited by the statute, is void and cannot be enforced.

II. The pretended incorporation of the "Onondaga Fine Salt Manufacturing Company," was a mere device set afoot by the maufacturers of fine salt on the Onondaga reservation, to evade the statute of 1841. This is found by the referee, and is indisputable. 1. The movement to form a company was initiated by the manufacturers. (*a.*) The manufacturers, before the corporation was organized, adopted the basis on which it should be formed and the rules by which it was to be governed. (*b.*) They designated the trustees. 2. There was no intention on the part of the corporation or of the manufacturers, to exercise the corporate franchise for the *bona fide* purpose stated in the certificate. That purpose was an incident; the real purpose was the evasion of the statute. (*a.*) The capital stock was nominal, it was divided into shares equal to the number of salt blocks, with the intention of transferring to each owner a certificate representing each block.

A business of several millions of dollars was to be transacted by a company with a capital stock of $700. (*b.*) The object to be attained, viz., the limiting of the amount of salt to be manufactured; the fixing of a uniform price, and protection against competition among the manufacturers, was to be accomplished through this organization. *First.* By vesting in the company the possession of all the salt blocks. *Second.* By employing each manufacturer to manufacture and deliver to the company, all the salt manufactured in each block, restricting the amount, under a penalty, to wit, a right to the company to take all salt manufactured above the amount limited, at eight cents a bushel. *Third.* By making the payment to the manufacturers for the salt taken, contingent upon the salt being "shipped, sold and realized for" by the company, thus connecting their interest with the success of the project, and avoiding thereby the necessity of capital, making in fact each manufacturer a contributor to the capital stock, to the amount of the salt manufactured by him.

III. The vital part of the illegal arrangement was the execution, by the company and the manufacturers, of the leases and contracts. This is so found by the referee. The plaintiff represents Mara & Co., and his right to recover rests upon the contract and lease made by them to the company. The referee finds that Mara & Co. were not affected by the illegal purposes of the company, apparently upon two facts found by him. 1st. That the firm of Mara & Co. never belonged to the defendant's company, and were not stockholders therein. 2d. That a paper was signed by the manufacturers agreeing to come in and take stock in the company, which was not signed by Mara & Co. As to this last finding, it is sufficient to say, that there is not a word of evidence in the case to support it. As to the point that Mara & Co., not being stockholders in the company, therefore did not belong to it, we say : 1st. It is entirely immaterial whether they

were members or stockholders in the company, if they understood, when they made the contract, that it was in aid of the illegal purpose. 2d. That Mara & Co. were cognizant of the illegal purpose of the organization of the company, is perfectly apparent. (a.) Mara participated in the meeting of the 13th of March, called "to mature a plan for a company" among the manufacturers. (b.) He subsequently contracted with the company, and consequently knew that the organization was perfected. (c.) He entered into a contract which, upon its face and by its terms, is in contravention of the statute. 3d. If Mara & Co. can recover upon this contract, because they were not the actual holders of scrip representing stock, then each manufacturer holds a valid contract with the company, upon which a recovery can be had. Thus, in defiance of the statute, the illegal combination is supported, and its purposes can be accomplished by the real parties omitting to become technical members of the company by receiving a certificate of stock. Again, the referee finds that the provision as to stock inserted in the certificate was "merely to meet the requirement of the statute, and not with the *bona fide* intention to form an adequate capital to conduct the business contemplated by the corporation." Mara & Co. did not stand in the position of "outsiders" making a contract with the company. The company, by the nature of the contract, was the mere agent of the manufacturers, to sell the salt and disburse the proceeds.

IV. It seems to be clear, that the contract in this case was in contravention of the statute, and that Mara & Co. were chargeable as participants in the illegal combination.

The learned referee, not having had his attention called by counsel to the real points in the case, seems to have overlooked the controlling force of the facts, which, upon the settlement of the case, he was compelled from the evidence to find.

*Davis & Leach,* for the respondent.

The plaintiff and defendant concur in the proposition, that the defendant's organization was in contravention of public policy, and was therefore void, and the case must be considered in reference to this concession.

I. Mara was not a party to the association, as found by the referee, and as appears by the evidence in the case. 1. He was not at the meeting when the company was formed. 2. He was not a subscriber to any articles of association, nor did he ever see them. 3. He was not a subscriber to any stock or the assignee of subscription. The general manufacturing law of 1848, under which this organization was made, provides the mode of organization, and in what way a party may become a stockholder or associate. A certain certificate must be signed, acknowledged and filed, and this must be executed by a certain number of persons, and from the time of the filing, the persons who have executed the same as required, and their successors, shall become a body corporate, &c. The capital of the company was divided into 350 shares of $200 each, all of which was subscribed by the corporators, Burton, &c. No stock was ever issued to Mara, or Mara & Co., and no one made any transfer to them, or either of them. Again; section 14 of the act of 1848, prescribes that nothing but money shall be considered as payment of any part of the capital stock. It follows, of necessity, that no arrangement for a lease of his works to a company, especially where no rent was reserved, could make Mara a stockholder. The lease contemplates no such thing. Mara could not be a stockholder without performing some act to render him contingently liable under the 18th section of the act of 1848. No such liability can for a moment be pretended.

II If not a stockholder, and charged by law with the liabilities of a stockholder, he was of necessity an outside

contractor with them, and however illegal the purposes of the company might be, Mara could not be affected thereby. Mara sold the company 400 barrels of salt at 80 cents per barrel, and has never been paid. The referee reported the amount due to the plaintiff as assignee, and it can be no answer to this claim to say that the defendant acted illegally and therefore ought not to pay.

*By the Court,* MULLIN, J. The defendant was incorporated under the general law providing for the incorporation of companies for the purpose of carrying on any kind of manufacturing, mining, mechanical or chemical business. (2 *R. S.* 657, *5th ed.*) The business specified in the charter of the defendant, filed pursuant to the aforesaid statute, is "*The business of manufacturing fine salt.*" This is a perfectly legitimate business, and the corporation was legally created. That the intention of those who participated in its creation was to carry into effect illegal purposes, is doubtless true; but the subsequent abuse or perversion of corporate powers does not destroy the body corporate. It may furnish a reason why the legislature or the courts should annul the charter and annul the corporation. We must hold the defendant a legal entity, and bound to answer the plaintiff in this action. It is found by the referee that the true object, purpose and intent of said pretended organization or corporation was to enable the manufacturers of fine salt on the Syracuse reservation, under cover of a corporate organization, to limit and fix the amount of salt to be manufactured on said reservation in 1858; to fix and control the price thereof, and to prevent competition in the price of salt. He also finds that an important part of the plan upon which said company was organized was, that each manufacturer should lease to said corporation the salt block or blocks owned by him; and at the same time enter into an agreement with said pretended corporation to manufacture salt for the said cor-

poration in the block or blocks so leased, under certain restrictions contained in said agreement, thereby giving to said corporation the control of the blocks and the salt manufactured in them. It is declared by *chapter* 183, *section* 16, *of the laws of* 1841, that any owner, occupant or person having charge of any manufactory of salt, who shall combine or conspire with, or enter into any combination, arrangement, agreement or understanding with any person or persons, to limit, restrict or fix the time of operating or running said works, or to increase, regulate or fix the price of salt, or the amount to be manufactured, shall be deemed guilty of a misdemeanor. The referee finds that Martin Mara & Co., the assignors of the plaintiff, were the owners of salt block No. 25. He also finds that the object of the corporation was to fix and control the price of salt, and that the mode in which it was to be accomplished was by the owners leasing to the corporation the salt blocks owned by them, and thus giving control of the quantity and price to the corporation. The purposes of the arrangement were in violation of the statute, and those concerned in it guilty of a misdemeanor. This court has held repeatedly that the purposes which were attempted to be accomplished through the corporation, were illegal. The end to be attained being illegal, the contracts and agreements entered into to secure the end must be equally so. But as it is possible that a party may enter into contracts which may give effect to the illegal purpose, in ignorance of the unlawful design, it is necessary for those assailing such agreements to show that such agreements were entered into with knowledge of the illegal object. If Martin Mara & Co. went to the charter, they found the declared object of the incorporation a legal one. It was consistent with the declared purposes that the corporation should take leases and contract for the manufacture of the salt. So far there was nothing to charge Martin Mara & Co. with notice. And indeed the only fact relied on to charge

them with notice is, that they, or one of them, attended the first meeting of the manufacturers to form a corporation. That, of itself, is not enough; because, as I have already shown, the declared object of the corporation was a legal one, and in the absence of evidence we cannot intend that an illegal one was discussed, or that term intended. The referee expressly finds, as matter of law, that Martin Mara & Co. are not chargeable with the illegal purposes of said company. If this conclusion was arrived at from conflicting evidence, we would be precluded from questioning its accuracy. But there is no conflict of evidence. The facts are uncontradicted which bear upon this question of knowledge, and I am constrained to dissent from the finding of the referee, whether it be one of fact or of law. Mara admits that he attended one meeting for the purpose of considering the question of organizing a corporation. No plan was agreed on at the meeting; there was only talk on the subject of forming a company. Why were individual owners combining to form a corporation, if it was not to secure some advantage not already enjoyed? If it was to combine capital, and thus to facilitate the operations of the new organization, it was not only legal but harmless. Mara & Co. leased to the corporation. Why? That it might thereafter carry on the business of making salt? Not at all. The corporation, by a concurrent agreement, obligate the lessors to put and keep the salt block in first rate running condition during the season, and manufacture for and deposit in bin, all the salt required to be made in said blocks by the party of the second part, not less than 15000 bushels, to be well made, and kept in good order, at and for the price of sixteen cents per bushel, payable as fast as the same shall be shipped and sold and realized by them; and the defendant covenanted that it would not unreasonably delay the taking and selling the salt, and that all salt made under the agreement should be sold and paid for by the 1st of June of the following year.

Mara & Co. further agreed to pay the duties, in advance, on 200 barrels, which the defendant was to refund by the 1st of September then next. And it was further agreed that if more than 15,000 bushels should be made, by mistake, on said block, the defendant should take and pay for it, at eight cents per bushel, subject to duties. But the said Mara & Co. should not have the right to make more than 15000 bushels.

It is impossible, it seems to me, for any man, in reading this agreement, not to see that the object of the parties to it was to limit the production of salt. For 15,000 bushels, 16 cents is to be paid; for any larger amount 8 cents. Is this the contract men renting salt blocks, and intending to produce all the salt the works could produce, or all the market would require, would be likely to make? Can it be possible that Mara & Co., when they made this agreement, did not understand that the scheme was to limit the quantity of salt produced, and thereby increase the price? Why did Mara & Co. agree to wait for their pay until sales were made, and proceeds realized by the company? Was it not a mere shift—a pretense to avoid the consequences of a combination to effect the same object among the owners of salt blocks in Syracuse?

It is impossible, it seems to me, to say, in view of these provisions, that Mara & Co. did not fully understand that the arrangement was to create a monopoly, and evade, if possible, the statute forbidding it. It seems necessary, in order to render the arrangement between the defendant and Mara & Co. illegal, that the latter should know the illegal purposes for which the corporation was created. It would not be proper to find such fact on the evidence in this case. But that is not the question. It is whether the arrangement between the defendant and Mara & Co. was illegal. It was as much a violation of the statute to combine to raise the price of salt by limiting the produce of one man for the year 1858 to 15,000 bushels, as to limit

Clancey *v.* Onondaga Fine Salt Manufacturing Company.

that of 350 men to that or any other quantity.   We must find that Mara & Co. knew that the object of the arrangement was to increase the price of salt, and that by the arrangement they were to receive the benefit of it.   This fact being known, and the agreement made to aid in carrying out the illegal purpose, it is utterly void and cannot. be enforced by Mara & Co., or any one deriving title through them.   (*Hallett* v. *Novion*, 14 *John*. 272.   *Pennington*, v. *Townsend*, 7 *Wend*. 276.   *Nellis* v. *Clark*, 20 *id*. 24; affirmed, 4 *Hill*, 424.   *Stanton* v. *Allen*, 5 *Denio*, 434. *Howard* v. *Vandewater*, 4 *id*. 349.   *Thalimer* v. *Brinkerhoff*, 20 *John*. 397.)

While a party to an illegal contract cannot enforce it, it is competent for him to resist its enforcement by reason. of its illegality.   (*Tylee* v. *Yates*, 3 *Barb*. 222.   *Nellis* v. *Clark*, 20 *Wend*. 24.   *Chitty on Cont. note*, 695, &c.)

I am of opinion that the judgment, on the report of the referee, should be set aside, and a new trial ordered, costs to abide the event.

New trial granted.

[OSWEGO GENERAL TERM, July 8, 1862.   *Mullin, Morgan* and *Bacon*, Justices.]