### DE WITT WIRE-CLOTH CO. *v.* NEW JERSEY WIRE-CLOTH CO.

*(Common Pleas of New York City and County, Special Term.* February, 1891.)

**1. CONTRACTS—PUBLIC POLICY—MONOPOLIES.**

An association of manufacturers of wire cloth, formed for the avowed purpose of regulating the price of the commodity, each of the members stipulating, under a heavy penalty, that he will not sell at less than a specified rate, is contrary to public policy and illegal; and one of the members of the association, who has paid the penalty for a violation of the stipulation, cannot recover it back.

**2. SAME—TRIBUNAL TO ENFORCE PENALTY.**

An agreement by which the penalty paid by a member for a violation of the stipulation is to be divided equally among his fellow-members, who have determined his guilt and declared the forfeiture, is void as against public policy; and, as the courts will refuse their aid in enforcing the decree of such a tribunal, they will also decline to assist a member who has obeyed the decree and paid the penalty.

Action by the De Witt Wire-Cloth Company against the New Jersey Wire-Cloth Company, for goods sold and delivered.   Plaintiff demurs to defendant's counter-claim.

*James A. Hudson,* for plaintiff.   *Charles A. Johnson,* for defendant.

PRYOR, J.   In extinguishment of an admitted cause of action, the defendant pleads that an equivalent sum is due it from plaintiff, in virtue of the following allegations of fact:   That three incorporated companies and two copartnership firms, engaged in the manufacture and sale of wire cloth, entered into an agreement, whereby, for the avowed object of "regulating the price" of the commodity, they constituted themselves an association, imposed upon them-

selves stipulated rates of charge, engaged that they "will sell no cloth at less than the prices set forth;" and, to insure obedience to this undertaking, subjected themselves to a heavy penalty for its violation; that plaintiff and defendant are parties to this agreement and association; that, pursuant to a provision of the agreement, defendant deposited $2,000 with the United States Trust Company, to be forfeited to the other members of the association in the event defendant should violate, *inter alia*, its obligation not to sell below the stipulated price; that the association declared the $2,000 forfeited; and that of this sum plaintiff received and wrongfully retains $500, which defendant counter-claims against its indebtedness to plaintiff. The validity of the counter-claim is challenged for formal defects, but, as I am of opinion that the plea is bad in substance, I dismiss from consideration the technical grounds of demurrer.

The declared purpose of the agreement is to enable the association, as between its members, to "regulate the price" of the commodity in which they deal, and this result is accomplished by empowering the association to fix a price, and by binding its members, under a penalty, not to sell below the sum so prescribed. Since all the members are to sell for the same price, of course competition between them is impossible; and, having power to fix the price, they will be impelled by the irresistible operation of self-interest to raise that price to the highest attainable figure. Here, then, is an agreement of which the inevitable effect is, in conformity with its proclaimed design, to restrict competition in trade, and to arbitrarily enhance the price of a commodity of commerce. That such a contract is repugnant to public policy, and so unlawful, is a settled principle in the jurisprudence of this country. The people have a right to the necessaries and conveniences of life at a price determined by the relation of supply and demand, and the law forbids any agreement or combination whereby that price is removed beyond the salutary influence of legitimate competition. "With results naturally flowing from the laws of supply and demand the courts have nothing to do; but when agreements are resorted to for the purpose of taking trade out of the realm of competition, the courts cannot be successfully invoked, and their execution will be left to the volition of the parties thereto." *Santa Clara, etc., Co.* v. *Hayes*, 76 Cal. 387, 18 Pac. Rep. 391. "In its very nature, a right to exclude competition is injurious to the public." *City of St. Louis* v. *Gas Co.*, 70 Mo. 69. "Public policy favors competition in trade, to the end that its commodities may be afforded to the consumer as cheaply as possible." *Salt Co.* v. *Guthrie*, 35 Ohio St. 666. "Free competition is the life of business; and all combinations for the purpose of raising or controlling the prices of merchandise are monopolies, and intolerable, and ought to receive the condemnation of all courts." *Richardson* v. *Buhl*, (Mich.) 43 N. W. Rep. 1102. "The natural law of supply and demand is the best law of trade." *State* v. *Goodwill*, (W. Va.) 10 S. E. Rep. 285. "Rivalry is the life of trade. The thrift and welfare of the people depend upon it." *Anderson* v. *Jett*, (Ky.) 12 S. W. Rep. 670. "It is against the general policy of the law to destroy or interfere with free competition, or to permit such destruction or interference." *Stewart* v. *Transportation Co.*, 17 Minn. 372, (Gil. 348.) "Competition is the life of trade," and "combinations and confederacies to enhance the price of any article of trade or commerce are injurious to the public," and therefore illegal. *People* v. *Fisher*, 14 Wend. 19. "Whatever destroys or even restricts competition in trade is injurious, if not fatal, to it." *Hooker* v. *Vandewater*, 4 Denio, 349, 353. "If the primary object of the firm was to prevent competition, it might be considered as against public policy," and it would be "condemned by proof that it was part of a conspiracy to control prices." *Marsh* v. *Russell*, 66 N. Y. 292. "The agreement was to prevent competition, and such competition it was not lawful for the parties to prevent or attempt to prevent." *Hartford, etc., R. Co.* v. *New York, etc., R. Co.*, 3 Rob. (N. Y.) 415. "A combination

to artificially enhance prices is inimical to the interests of the public, and all contracts designed to effect such an end are contrary to public policy, and therefore illegal." *Arnot* v. *Coal Co.*, 68 N. Y. 558. A combination to raise the price of lard is "an unlawful plot," and an indictable misdemeanor. *Leonard* v. *Poole*, 114 N. Y. 371, 21 N. E. Rep. 371; *Stanton* v. *Allen*, 5 Denio, 434; *Clancey* v. *Manufacturing Co.*, 62 Barb. 395; *Craft* v. *McConoughy*, 79 Ill. 346; *Association* v. *Koch*, 14 La. Ann. 168; *Hilton* v. *Eckersley*, 6 El. & Bl. 47; *People* v. *Gas Trust Co.*, (Ill.) 22 N. E. Rep. 798; *People* v. *Refining Co.*, 7 Ry. & Corp. Law J. 83; *Watson* v. *Navigation, etc., Co.*, 52 How. Pr. 348; *Murray* v. *Vanderbilt*, 39 Barb. 141; *Wright* v. *Ryder*, 36 Cal. 342; *Morgan* v. *Donovan*, 58 Ala. 242; DANIELS, J., in *People* v. *Refining Co.*, 7 N. Y. Supp. 406.   Thus by the overwhelming, if not uniform, current of authority, the agreement under criticism is condemned as contrary to public policy, and illegal. Nor is the operation of the rule forbidding contracts restricting competition and enhancing price limited to trade in the necessaries of life, but, as appears from the citations above, extends equally and alike to all commodities of commerce. Neither need the agreement or combination, in order to expose it to the denunciation of the law, constitute a complete monopoly or effect a total suppression of competition; but the language of courts and of writers is that, if the agreement or combination tends to monopoly, or reduce or lessen competition, it is contrary to public policy and unlawful, because operating *pro tanto* an artificial enhancement of price. Authorities *supra*. It results, therefore, that, as defendant's counter-claim demands the repayment of money received by plaintiff upon an illegal agreement, the court will not interpose for its restitution. The familiar maxims, *ex pacto illicito non oritur actio*, and, *in pari delicto potior est conditio possidentis*, are fatal to defendant's contention.

Another vice in the agreement with which defendant's counter-claim is implicated would suffice to invalidate it. By the instrument constituting the Wire-Cloth Manufacturers' Association it is provided that, upon complaint made of its violation, the accused member shall be condemned to forfeit his $2,000 deposit, which shall thereupon be divided in equal parts among the members who have determined his guilt and declared the forfeiture, and the answer alleges that the $500 which defendant seeks to reclaim was received by plaintiff as its share of the $2,000 deposited and forfeited by defendant. Plainly the tribunal so created and so empowered is obnoxious to the criticism of the court of appeals in *Austin* v. *Searing*, 16 N. Y. 112, where it is said: "An agreement by which the members of an association undertake to confer judicial powers upon a body of men as a tribunal having authority to adjudicate upon alleged violations of the rules of the association, and to decree a forfeiture of the rights of property of parties adjudged to have been guilty of such violation, is void as against public policy, and the courts will not enforce such a contract, nor lend their aid to give effect to the decrees of a tribunal thus constituted." And, if the courts will refuse to enforce such an agreement, while executory, so will they decline to undo it when executed, but will leave the parties in the situation in which, by their illegal contract, they have placed themselves. *Knowlton* v. *Congress, etc., Co.*, 57 N. Y. 518; *Haynes* v. *Rudd*, 83 N. Y. 251. The agreement under consideration is even more repugnant to law than that condemned in *Austin* v. *Searing*, for it constitutes the persons who are to benefit by the forfeiture the tribunal by which it is to be decreed, contrary to the principle of natural justice that no man shall be a judge in his own cause, (Broom, Leg. Max. 116,)—a principle so inviolable that not even an act of parliament can impugn it, (*Day* v. *Savadge*, Hob. 85, 87.) If, on the other hand, we suppose the agreement to be valid, and the tribunal that inflicted the forfeiture legal, the same result follows,—that defendant cannot reclaim money paid in conformity with its own contract, and by the decree of a court of its own choosing. In any view, the counter-claim is untenable, and the demurrer must be sustained.