(34 Misc. Rep. 260.)

### COLLINS v. AMERICAN NEWS CO. et al.

(Supreme Court, Special Term, New York County. March, 1901.)

1. NEWSPAPERS—REFUSAL TO SELL TO DEALERS—RIGHT OF ACTION.

A complaint in an action by a news dealer alleging that an association of publishers of certain New York papers had agreed to cut off his supply unless he desisted from distributing with the newspapers circulars calculated to make him a competitor with the newspapers in the business of

advertising does not constitute a cause of action, as the defendants have a right to refuse to sell him papers, though it may result in a loss to complainant.

2. BREACH OF CONTRACT—COMPLAINT.

A complaint in an action for breach of contract which alleges that plaintiff has a contract with defendant, and that he has always performed it on his part, whereby defendant was to deliver to him at an agreed price, and upon agreed terms, such newspapers as he may order, is insufficient as a statement of a valid, subsisting agreement, as neither the contract price nor the terms are stated, nor is it shown that the contract was binding on the other party.

Action by John G. Collins against the American News Company and others. Judgment for defendants on demurrer.

Arthur Furber, for plaintiff.
Wallach & Cook, for defendants.

GILDERSLEEVE, J. The complaint avers, in substance, that the plaintiff is a dealer in newspapers, and that in connection with the sale of his papers he distributes handbills and circulars, using the papers as a medium therefor; that the Publishers' Association, one of the defendants, is composed of the publishers of the Sun, Herald, World, Times, Press, Brooklyn Eagle, and the Staats-Zeitung, newspapers published in the city of New York; that these publishers work in concert under the direction of the Publishers' Association in matters delegated to it by the publishers; that the business of the defendant the American News Company is selling newspapers at wholesale; that the Williamsburgh News Company is a branch of the American News Company; that the papers in question are sold by their publishers to dealers through distributing contractors, of whom the American News Company is one; that the plaintiff purchases his supply of papers from the American News Company through the Williamsburgh News Company; that he has a contract from the American News Company, through its branch, the Williamsburgh News Company, to deliver to him daily such papers as he shall order, which contract he has always performed on his part; that with intent to deprive the plaintiff of his right to carry on his business, and of his profits therein, the publishers have confederated and agreed to coerce plaintiff and prevent him from distributing handbills and circulars with his papers, and have directed the American News Company not to supply papers to him unless he shall desist from such distribution, and sign an agreement to that effect; that under pressure from the publishers the American News Company and the Williamsburgh News Company have threatened and are threatening to discontinue the supply of their newspapers to the plaintiff unless he shall comply with this demand; that, if the supply of papers to plaintiff should be cut off, his business would be ruined, and he be compelled to give it up; and that he is without adequate remedy at law. Defendants demur to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The relations existing between the various defendants towards each other are not very definitely stated in the complaint, but it is reasonably clear that the relation existing between the American News Company and the Wil-

liamsburgh News Company is that of principal and agent; that the relation between the American News Company and the Publishers' Association, composed of the publishers of the various papers, is that of a distributing contractor. Whether the pleader used the terms "distributing contractor" as importing the relation of buyer and seller, or of principal and agent, between the American News Company and the publishers, may be doubted. But, taking these terms in their ordinary sense, they denote one who has contracted or undertaken to distribute the papers in question as the agent of the publishers. The plaintiff proceeds upon one of two theories, viz. either: First, that he has a valid, subsisting contract with the American News Company, as principal, for supplying him with papers, and that, through the interference and influence of the publishers, wrongfully exercised, the American News Company is about to break their contract with him, to his irreparable injury; or, second, that his contract is with the publishers, through the American News Company, as their agent, and that he is about to be deprived of the benefit of it by an unlawful conspiracy on the part of the publishers. Regarding these theories, it must be observed that either of them must depend for its support upon the existence of a valid, subsisting contract for supplying the plaintiff with papers. But the complaint, upon the most liberal construction of its averments, and allowing every intendment by way of reasonable inference in its favor, fails to state such an agreement. All that it contains on this subject is that the plaintiff "has a contract from the American News Company, through its branch, the Williamsburgh News Company, to deliver to him, from day to day, at an agreed price and upon agreed terms, such newspapers as he shall and may order from it," and that he has always performed this contract on his part. This is wholly insufficient as a statement of a valid, presently subsisting agreement. Assuming that the American News Company agreed to sell papers to the plaintiff, it does not appear that the plaintiff ever bound himself to the American News Company by agreeing to take the papers and pay for them; and, if he did not, the contract was wanting in mutuality and without consideration. Nor is it shown when the contract was made, nor how long it was to continue. Hence, for aught that appears, if there ever was a valid agreement between the plaintiff and the American News Company, it may have terminated before this suit was commenced. So, also, as to the performance of the contract by the plaintiff. As its terms are not stated otherwise than that the price and terms were "agreed," the court cannot determine whether the plaintiff has performed the contract or not. If the contract is indefinite as respects its duration, it may, of course, be terminated at the pleasure of either party.

The complaint is fatally defective in the respects thus indicated. Moreover, it is without equity. The plaintiff's whole grievance is that the publishers of six daily newspapers in New York have "confederated" together to demand that he desist from distributing handbills, etc., under pain of having his supply of papers cut off if he refuse so to do. The defendants are, to all intents and purposes, a unit in interest, though they appear under different names, and seemingly in different relations. As we have seen, the American News

Company is a distributing contractor employed by the publishers, having the Williamsburgh News Company as one of its branches, and the Publishers' Association is composed of the publishers of the different newspapers, so that for all essential purposes this suit is to be regarded as one between the plaintiff and the publishers of the several newspapers. But, if it were otherwise, and the American News Company were the purchaser from the publishers of the papers supplied to the plaintiff, I think the principle of decision would be the same. The question presented is, do the publishers propose to do anything unlawful, in directing the American News Company to discontinue the sale of papers to the plaintiff unless he shall desist from using them as a medium for the distribution of circulars, handbills, etc.? The plaintiff's counsel argues very earnestly for the liberty of every citizen to conduct his business in his own way, and supports his position by apposite authorities. His doctrine is sound. It is a fundamental constitutional principle of universal application. Its operation, also, is mutual, and pertains as much to the publishers and their business as to the plaintiff and his business; and the defendants, lawfully conducting their business, have the right to determine the policy they will pursue therein, and the persons with whom they will deal. The fact that the publishers have, in the language of the complaint, "confederated" to discontinue plaintiff's supply of papers unless he shall agree to desist from using them as a medium of distributing handbills, etc., does not aggravate their conduct towards the plaintiff. What any publisher could lawfully do individually, all the publishers may lawfully combine to do. There is no charge in the complaint of malice or oppression, and it does not appear that the act contemplated by the publishers is in itself unlawful or malicious. It is true that the complaint makes the bald charge of confederation or conspiracy against the defendants, but there is no peculiar force or spell in those words, when used in a pleading, independently of facts which show the animating motive in a given case to be unlawful. It must be assumed, therefore, in the absence of specific allegations to the contrary, that the defendants' motive is a lawful one. By reasonable intendment, the defendants seek not to injure the plaintiff, but to protect themselves by preventing him from making such use of their publications as shall make him a competitor with them in the business of advertising. In this they are deeply interested, for it is a matter of common knowledge that the business of newspaper publishing depends for its profit almost entirely upon the revenue derived from its advertising patronage. This is not the case—of which there are many examples in the books—of strangers maliciously intermeddling in matters between other parties which do not concern them. The question here is, in substance, if not in form, between the plaintiff and the publishers. Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, cited by the plaintiff's counsel, is distinguishable in the fact that the wrong there complained of was the meddlesome interference of outside third parties between an employé and his employer. Park & Sons Co. v. National Wholesale Druggists' Ass'n, 30 App. Div. 508, 52 N. Y. Supp. 475, also cited by plaintiff's counsel, decided nothing to the point. That case arose on an appeal from

an order striking out certain allegations of the complaint. No question of the sufficiency of the complaint to constitute a cause of action was involved or discussed.

As plaintiff's counsel argues, the plaintiff's business of distributing handbills with his papers is entirely lawful, and one with which no one can rightfully interfere. But interference and assistance are two different things. The defendants do not propose to interfere with plaintiff's business. They merely refuse to aid him in it by allowing him to use their papers as a means of circulating handbills to the injury of their advertising business. The plaintiff virtually takes the selfish, onesided view that, since his business is lawful, the defendants must aid him in it, so far, at least, as to sell him their papers, even if it be to their own hurt, so long as it is to his profit. There is no view of the case in which it can be said that the defendants have been guilty of a conspiracy in restraint of trade; nor is there anything like dictation on the part of the publishers as to the manner in which the plaintiff shall conduct his business. They simply say, as they have a right to say, arbitrarily if they choose, that they will not sell their papers to the plaintiff. Doubtless the discontinuance of a supply of papers to the plaintiff will seriously injure him in his business; and, on the other hand, to continue that supply will to some extent, at least, be an injury to the publishers. Suppose, for example, the paper manufacturers from whom these publishers obtain their supply of paper should combine and agree that, because of the economic or political principles advocated by the papers in question, to which they were opposed, they would not sell the publishers any more paper; and suppose, further, that those manufacturers were the only ones who could furnish the paper required by those publishers, and that the consequences of such refusal would be to cause the publishers very great pecuniary loss; would it be within the power of any court, in the absence of some binding agreement, to compel the manufacturers to sell their paper to the publishers? Assuredly not. There is no place in any system of jurisprudence yet devised for the principle that a man may be compelled to sell his goods or his labor to one with whom he does not wish to deal, merely because his refusal to do so may cause loss to him who wants them. The foregoing conclusions will be found to be amply sustained by the following authorities: Lewin v. Light Co. (C. C.) 81 Fed. 904–906; Steamship Co. v. McGregor, 23 Q. B. Div. 598–615; Macauley v. Tierney, 19 R. I. 255–263, 33 Atl. 1, 37 L. R. A. 455; Allen v. Flood [1898] App. Cas. 1; Reynolds v. Association, 30 Misc. Rep. 709, 63 N. Y. Supp. 303.

Judgment for defendants on demurrer, with costs, with leave to plaintiff to amend on payment of costs.