JOSEPH A. SULTAN, Plaintiff, *v.* STAR COMPANY, INC., PRESS PUBLISHING COMPANY, SUN PRINTING AND PUBLISHING ASSOCIATION, MAIL AND EXPRESS COMPANY, NEW YORK HERALD COMPANY, NEW YORK EVENING POST COMPANY, COMMERCIAL ADVERTISER ASSOCIATION, NEW YORK TIMES COMPANY, GERMAN HEROLD PUBLISHING COMPANY OF NEW YORK CITY, INC., NEW YORKER STAATS ZEITUNG CORPORATION, JOURNAL OF COMMERCE AND COMMERCIAL BULLETIN, INC., JOSEPH CASHMAN, as Treasurer of Dow, JONES AND COMPANY, EVENING JOURNAL ASSOCIATION, HERBERT L. BRIDGMAN, Individually and as Chairman of PUBLISHERS' ASSOCIATION OF NEW YORK CITY, LINCOLN B. PALMER, Individually and as Secretary of the PUBLISHERS' ASSOCIATION OF NEW YORK CITY, and SAMUEL BLOOD, as President of the AMERICAN NEWS COMPANY, Defendants.

(Supreme Court, Kings Special Term, January, 1919.)

Injunctions — when preliminary, may issue — when motion for an injunction pendente lite to restrain certain New York newspapers from refusing to deliver newspapers to plaintiff will be granted — pleading — conspiracy.

Upon a motion for the continuance of a preliminary injunction it is not necessary that a case be made out such as would entitle the plaintiff to relief at all events upon the final hearing.

If the plaintiff makes out a *prima facie* case, or if from the pleadings and the affidavits it appears to the court that a case is presented proper for investigation on a final hearing, a preliminary injunction may issue to maintain the *status quo*.

Where upon a motion for an injunction *pendente lite* to restrain the defendants, who are the publishers and distributors of certain New York newspapers, from refusing to deliver to plaintiff, who at present and for more than five years last past has conducted a store for the sale of newspapers, etc., in the

city of Brooklyn, the respective newspapers published by defendants, other than the defendant " Star Company," except upon condition that plaintiff shall handle and retail all the newspapers published by all the defendants without discrimination, including the New York *American* and the *Evening Journal,* published by the " Star Company," the facts established clearly point to a combination or conspiracy on the part of the defendants, they having organized themselves into an unincorporated association to practically control the distribution, sale and purchase of all the newspapers published in New York except one and the local Brooklyn newspapers, to compel the plaintiff to regulate his business under the direction of said defendants at the hazard of depriving him of the supplies upon which his business depends and thus to prevent him from competing with such other newsdealers as would transact and carry on their business under the conditions which the defendants should choose to prescribe, a *prima facie* case of an illegal invasion of the rights of plaintiff is established, and as no rights of any of the defendants except the " Star Company " can be affected, the motion will be granted.


MOTION for an injunction *pendente lite.*


Thomas Henry Keogh (Lemuel Ely Quigg and George H. D. Foster, of counsel), for plaintiff.


William A. De Ford (John T. Sturdevant, of counsel), for defendant Star Company.


Morris, Plante & Saxe (Guthrie B. Plante and Charles E. Mahoney, of counsel), for defendants Sun Printing and Publishing Association, Mail and Express Company, New York Herald Company, New York Evening Post Company, Commercial Advertiser Association, New York Times Company, German Herold Publishing Company of New York City, Inc., Journal of Commerce and Commercial Bulletin, Herbert L. Bridgman, individually and as chairman of Publishers' Association of New York City, and Lincoln

B. Palmer, individually and as secretary of Publishers' Association of New York City.

Francis B. Sanford, for defendant American News Company, Inc.

Amend & Amend (John E. Donnelly, of counsel), for defendant New Yorker Staats Zeitung.

Taylor, Jackson, Brophy & Nash, for defendant Press Publishing Company.

Charles E. Mahoney, for defendants Evening Journal Association and Dow, Jones & Company.

BENEDICT, J.   This is a motion by the plaintiff, a newsdealer, for an injunction *pendente lite* restraining the defendants, who are publishers and distributors of certain New York newspapers, from refusing to deliver to the plaintiff the respective newspapers published by the defendants above named (other than the defendant Star Company), except upon the condition that the plaintiff shall handle and retail all the newspapers published by all the defendant publishers without discrimination, including the newspapers published by the defendant Star Company, *i. e.*, the New York *American* and the *Evening Journal.* The action is brought to obtain a permanent injunction.

The complaint alleges that the plaintiff conducts a store for the sale of newspapers, magazines, stationery and cigars and similar articles at No. 240 Flatbush avenue, Brooklyn, and has conducted such store for more than five years last past. It further alleges that the defendants, other than the defendants Bridgman, Palmer and Blood, " owned and controlled substantially all of the leading newspapers circulated in the city of New York and in the borough of Brooklyn with the exception of the New York *Tribune* and the

local newspapers published in the said borough of Brooklyn." It further alleges that the defendants, with the three exceptions above named, " have heretofore organized themselves into an unincorporated association, the above mentioned defendant Publishers' Association of New York; that the said defendant publishers, through this said organization, Publishers' Association of New York, control the distribution, sale and purchase of practically all the newspapers published in New York, except the New York *Tribune* and the local Brooklyn newspapers;" " that substantially all of the morning papers published by the defendant publishers have been prior hereto and still are distributed by the defendant American News Company," " and that certain individuals doing business under the registered trade name of the Brooklyn News Company in the Borough of Brooklyn are agents of the said American News Company for the distribution of newspapers in the Borough of Brooklyn; that the said American News Company has an almost complete monopoly of the business of supplying retailers with morning newspapers; that at the present time none of the important morning newspapers published in New York City, except the *Tribune,* can be obtained by retailers otherwise than through the American News Company."

It is further alleged in the complaint " that each of the evening newspapers published by the defendant publishers is distributed to retailers by route men employed by the said publishers." Plaintiff further alleges that prior to August 19, 1918, he dealt in all the New York newspapers, both morning and evening; that prior to that date he purchased and sold on week days upwards of 250 of the New York evening papers; that at the time of the declaration of war by the United States the plaintiff had been carrying for sale news-

papers published in the German language; that thereafter, and prior to the 19th of August, 1918, plaintiff discontinued the sale of certain newspapers published in a foreign language; that during the same time the demand by plaintiff's customers for the New York *American* and the New York *Evening Journal* fell off, and many customers objected to the display of these two papers in plaintiff's store, and many customers told plaintiff that they would not continue to patronize him if he continued to carry said papers in stock; that the sale of the said two papers became no longer profitable to plaintiff; that by reason of these facts, and because, as plaintiff alleges, he himself believed the said papers to be unpatriotic and anti-American and did not wish to deal in them, he discontinued entirely carrying in stock for sale the New York *American* and the New York *Evening Journal;* that during the winter of 1917 and 1918 the defendants, through the Publishers' Association of New York, fixed the price of all papers published by the defendant publishers at two cents per copy retail and to the newsdealers at $1.40 per 100 copies without the privilege of returning unsold copies; that thereafter the terms were modified by allowing the dealers to return unsold copies until about July 15, 1918, when the return privilege was withdrawn by order of the War Industries Board; that the plaintiff and other dealers wished to discontinue their orders for the New York *American* and the New York *Evening Journal,* but that the defendant Star Company, Inc., by its servants and distributing agents, refused to discontinue any orders for the New York *American* and the New York *Evening Journal,* although requested to do so by the plaintiff and other newsdealers.

The plaintiff further alleges, on information and belief, " that on or before the said 19th day of August,

1918, all the defendants above named, and each of them, unlawfully agreed and conspired together to compel all newsdealers in the city of New York to continue to carry in stock the New York *American* and the New York *Evening Journal,* notwithstanding that many of the said newsdealers were unwilling to buy the said newspapers, and many of the said dealers found them unprofitable;'' he further alleges '' that the said defendants further unlawfully combined and conspired together to sell no papers to any newsdealer who refused to buy the said New York *American* and New York *Evening Journal;* that by the said combination and conspiracy and the acts of defendants done in pursuance thereof, the defendants are maintaining and attempting to maintain a monopoly in the sale of newspapers in the city of New York, and are restraining and preventing competition in the supply and purchase of newspapers, and are restricting and preventing the free pursuit of the lawful business of newspaper dealers, and preventing the plaintiff from engaging in the said business.'' The complaint further alleges that on August 19, 1918, the plaintiff in writing notified the defendant American News Company and the Brooklyn News Company to cancel orders for the said New York *American,* and directed that no more copies of said newspaper be sent to him; that notwithstanding this the American News Company, through the Brooklyn News Company, has continued and still continues to deliver to plaintiff thirteen copies daily of the New York *American,* and has refused and still refuses to discontinue delivering said papers as a part of the delivery of their morning papers; that the plaintiff has notified the American News Company that he will not pay for these papers, and has tendered the papers to the news company, but that the news company has refused to accept the same, and that all of

the copies of said paper remain in plaintiff's place of business unsold and unpaid for. The complaint further alleges that "the American News Company, and its agents, and as agent for the defendants, have threatened, and continue to threaten, not to sell and deliver to plaintiff copies of any New York newspapers unless plaintiff resumes the purchase and sale of the New York *American* and New York *Evening Journal* in the same manner and to the same extent as prior to August 19, 1918." It further alleges that since August 19, 1918, the defendants, who are the publishers of the New York evening papers, with the exception of the New York *Evening Post,* have refused to sell to the plaintiff, after due demand, any copies of such evening papers, and the plaintiff has thereby been prevented from selling any copies of any of the evening papers published by said defendants, and that since the 1st day of September, 1918, the New York Evening Post Company has refused to sell and deliver to plaintiff, after demand, any copies of the New York *Evening Post.* The complaint further alleges that the defendants have further harassed and annoyed the plaintiff, and interfered with the plaintiff's business, and with the business of other newsdealers, by picketing in front of the said newsdealers' stands and places of business.

The affidavits and reply affidavits submitted on this application are voluminous, and deal with some matters which seem to have little, if any, bearing on the merits of the application; but the main contentions of the plaintiff regarding the facts are not disputed. For example, it is admitted by the affidavit of the defendant Bridgman "that the association notified the defendant American News Company to refuse morning papers to dealers who discriminated against any one of said morning papers," and by the affidavit of the defendant Palmer "that deponent, as secretary

4

of said association, at the instance of certain of the members of said association, caused a notice to be sent to the American News Company requesting said American News Company to advise all newsdealers served by the American News Company and its branches that they would not be supplied by said members through the American News Company agencies unless all orders for all papers were taken out as usual," and the affidavit of Louis Wiley, the business manager of the New York Times Company, states " the matter was made the subject of conferences between representatives of the *Times* and representatives of other New York papers, and as a result of such conferences it was decided, as a defensive matter, that the publishers thus threatened would refuse to sell their newspapers to any newsdealer who inaugurated a strike by boycott and refusing to handle any one or more of such newspapers  *  *  *; that in order to give effect to the decision reached by the publishers  *  *  * the Publishers' Association was requested by the interested publishers to notify the American News Company that their papers were not to be supplied to the newsdealers through the agency of the American News Company unless all orders for all papers should be taken out as usual."  In the affidavit of Don C. Seitz, the business manager of the defendant Press Publishing Company, which publishes the morning and evening editions and the Sunday edition of the New York *World,* it is stated " that deponent, on behalf of the Press Publishing Company, joined in the action of other publishers in refusing to sell and deliver the *World* to the plaintiff or other dealers who refused to handle other New York papers."  This statement, in like words, with the exception of the substitution of the words " *Sun* " and " *Evening Sun* " for " New York *World* " and " Sun Printing and Publishing

Association '' for '' Press Publishing Company '' is contained in the affidavit of Ervin Wardman, who is the vice-president of the defendant Sun Printing and Publishing Association, which publishes the *Morning Sun* and the *Evening Sun.* Arthur B. Chivers, the business manager of the defendant Commercial Advertiser Association, which publishes the New York *Globe and Commercial Advertiser,* makes a similar statement in his affidavit as to his paper, as does also Robert B. McLean, the business manager of the New York Evening Post Company, the publisher of the *Evening Post.* Henry L. Stoddard, president of the Mail and Express Company, which publishes the *Evening Mail,* uses similar language in his affidavit, substituting only the name of his paper. Frank D. Flaherty, the general manager of the New York Herald Company, which publishes the New York *Herald* and *Evening Telegram,* makes a like affidavit. Edward P. Call, the business manager of the Journal of Commerce and Commercial Bulletin, Inc., which publishes the *Journal of Commerce,* swears '' that in August, 1918, this defendant with respect to the sale of its papers imposed the condition that it would not sell its papers to such newsdealers as were engaged in a boycott of any other New York paper.''

It therefore seems to be *clearly established* that, if this motion be denied, and if the plaintiff shall, pending the trial of this action, persist in his refusal to receive and offer for sale copies of the New York *American* and of the New York *Evening Journal* upon the same scale and displaying them upon his stand in the same manner in which he was formerly accustomed to order and display such papers, the defendants, other than the Star Company, will refuse to sell to the plaintiff copies of their respective publications.

It is urged on behalf of the plaintiff that the acts

of the defendants violated the provisions of section 340 of the General Business Law and of section 14 of the Stock Corporation Law and of subdivisions 5 and 6 of section 580 of the Penal Law. These statutes are as follows:

*General Business Law* —" Section 340. Contracts for monopoly illegal and void.— Every contract, agreement, arrangement or combination whereby a monopoly in the manufacture, production or sale in this state of any article or commodity of common use is or may be created, established or maintained, or whereby competition in this state in the supply or price of any such article or commodity is or may be restrained or prevented, or whereby for the purpose of creating, establishing or maintaining a monopoly within this state of the manufacture, production or sale of any such article or commodity, the free pursuit in this state of any lawful business, trade or occupation is or may be restricted or prevented, is hereby declared to be against public policy, illegal and void."

*Stock Corporation Law* —" Section 14. Combinations prohibited.— No domestic stock corporation and no foreign corporation doing business in this state shall combine with any other corporation or person for the creation of a monopoly or the unlawful restraint of trade or for the prevention of competition in any necessary of life."

*Penal Law* (§ 580, subds. 5 and 6)—" If two or more persons conspire: * * *

" 5. To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use or employment thereof; or,

" 6. To commit any act injurious to the public

health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws,

 " Each of them is guilty of a misdemeanor."

The plaintiff contends that the action of the defendants, other than the Star Company, in refusing to supply him with their publications, unless he shall continue to purchase a fixed number of copies daily of the New York *American* and of the New York *Evening Journal,* is an unlawful conspiracy and combination to prevent him from exercising free conduct and control over his business.

The defendants contend that there is nothing illegal in their actions; that they are actuated simply and solely by a desire to protect themselves against what they believe to be a plan on the part of the plaintiff and other newsdealers to indulge in a boycott against such of the papers as refuse to reduce the wholesale price from $1.40 per 100 to $1.20 per 100, and that the Star Company was selected as the first of a series of victims of such boycott.

If the plaintiff be right in his contention, then I think he would be entitled to the judgment for which he asks. As was said in *Klingel's Pharmacy* v. *Sharp,* 104 Md. 218: "A combination is a conspiracy in law whenever the act to be done has a necessary tendency to prejudice the public or oppress individuals, by unjustly subjecting them to the power of the confederates, and giving effect to the purposes of the latter, whether of extortion or mischief; and the same proposition in one form of expression or another, is laid down in all of the criminal law." A criminal conspiracy is not alone one which consists of an unlawful combination to do an act unlawful in itself; it may be also a conspiracy to do or accomplish a lawful act by unlawful means. See, also, *Watson* v. *Harlem & N.*

*Y. Nav. Co.,* 52 How. Pr. 348, and *Matter of Davies,* 168 N. Y. 89, where the Court of Appeals, in considering section 340 of the General Business Law, *supra,* by Vann, J., say at page 101: " The general purpose of the act is expressed in its first section. Its object is to destroy monopolies in the manufacture, production and sale in this state of commodities in common use, to prevent combinations in restraint of competition in the supply and purchase of such commodities, or in restraint of the free pursuit of any lawful business, trade or occupation. The act in this respect is little more than a codification of the common law upon the subject, and its validity, to this extent, is not and cannot be successfully questioned in view of a long line of authorities."

It is vigorously urged in the able and voluminous briefs of the defendants that, in refusing to sell their papers to the plaintiff, unless he shall purchase the so-called " Hearst " papers, they are not engaged in an unlawful combination or conspiracy, but are actuated only by a desire to take all lawful steps to protect themselves in the conduct of their own business. In other words, they contend, as was said in *Collins* v. *American News Co.,* 34 Misc. Rep. 260, 263: " the defendants seek not to injure the plaintiff, but to protect themselves."

No advantage at all commensurate with the labor involved could be derived from a review in this opinion of the very numerous authorities cited by the defendants upon their briefs and which they claim support their contentions. I am no disrespecter of judicial authority, but I have found from a somewhat extended experience that industrious and clever counsel are usually able, out of the enormous mass of judicial writing upon the shelves of our libraries, to pluck sentences, expressions or dicta which seem to

sustain their position for the case in hand. It should not be forgotten, however, as Lord Coke pointed out, that it is always necessary to strengthen opinion not with authority alone, but with the two great guides, authority and reason. If precedents alone are followed slavishly and without discrimination, our law would soon degenerate into a dead science, instead of being as it is a vital principle governing the affairs of men in their dealings with one another.

In the present case I am convinced, both by reason and authority, that the plaintiff is right in his position and that the defendants are wrong in theirs. In *Auburn Draying Co.* v. *Wardell,* 178 App. Div. 270, 279, we find the following language: " In determining whether the intent actuating the members of the combination was legal or otherwise, we have the aid of various statutory enactments. If the acts complained of in fact violate some express statutory provision, then clearly that may be prohibited and at the suit of a private suitor. (*Kellogg* v. *Sowerby,* 190 N. Y. 370; *Rourke* v. *Elk Drug Co.,* 75 App. Div. 145.) In this connection attention is directed to section 580 of the Penal Law, which provides by subdivisions 5 and 6 as follows: " [here follow subdivisions 5 and 6 of section 580 of the Penal Law, *supra.*] " It would seem that the acts found by the trial court do offend subdivision 5 of the above section 580 of the Penal Law in that they were designed to prevent the plaintiff from exercising a lawful trade or calling by threats of interference with property belonging to it. Such a conception requires that the word ' property ' in this instance shall be construed to include the good will and patronage of the plaintiff. For such conclusion there is judicial authority. (*People* v. *Davis,* 159 App. Div. 464; *Newton Co.* v. *Erickson,* 70 Misc. Rep. 291, affirmed without opinion, 144 App. Div. 939.)

" The application of subdivision 6 of section 580 is not so clear. By this subdivision it is prohibited, however, to conspire to commit any act injurious to trade or commerce. * * * The executed purpose of the combination was directed to putting the plaintiff out of business. It had substantially accomplished its purpose. This removed one of the many competitors in that line of business. It necessarily tended to disrupt and obstruct the free flow of commodities and chattels. Injury to trade and commerce was the direct result of the executed purpose of the combination and being the direct result, the consequence must be presumed to have been intended.

" But besides and beyond this statute to combine for the purpose of the destruction of another's business is unlawful at common law and such seems to have been the uniform holding of our courts from the time of *Curran* v. *Galen,* and we, therefore, return to the consideration of the evidences of such a purpose to be found in this record.

" The intent and object of this combination were properly handled by the trial court as a question of fact. Intent is always a fact. It deals with the mental operations of the conspirators."

The facts in the case, as established upon the present state of the record, can hardly be said to be in dispute. They clearly point to a combination or conspiracy on the part of the defendants to use the tremendous force of their united power to compel the plaintiff to regulate his business under the direction of the defendants at the hazard of depriving him of the supplies upon which his business depends, and thus to prevent him from competing with such other newsdealers as would transact and carry on their business under the conditions which the defendants should choose to prescribe. In this lies the essence of the case

against the defendants. *Kellogg* v. *Sowerby, supra.* This joint action is in the highest degree arbitrary, coercive and un-American. For the purposes of this motion, I am constrained to hold it to be *prima facie* an illegal invasion of the rights of the plaintiff. Other facts may, it is true, develop upon the trial which will require a different conclusion, but the present duty of the court is plain, and, as was said by a great English judge in one case, '' I must forget the name of the Court in which I sit, if I refuse to grant it.'' See *Lord Cranstown* v. *Johnston,* 3 Ves. Jr. 170.

Upon an application for the continuance of a preliminary injunction, it is not necessary that a case should be made out that would entitle the complainant to relief at all events on the final hearing. If the complainant has made out a *prima facie* case, or if from the pleadings and the affidavits it appears to the court that a case is presented proper for its investigation on a final hearing, a preliminary injunction may issue to maintain the *status quo.* 22 Cyc. 941, citing *Litchfield* v. *City of Brooklyn,* 10 Misc. Rep. 74, in which case it was said: '' The plaintiffs are entitled to an injunction, pending the suit, provided they make out a *prima facie* case, and provided they are willing to do what is right and equitable under the circumstances. It is not necessary that they should show an absolute right to a final injunction. If the court is of opinion that the case, even on a single question, requires a more careful consideration than can be given on the hearing of a motion, then the preliminary injunction should issue and, on a full and fair hearing at the trial, the questions of law and fact may be determined.''

It seems to the court that this is peculiarly and particularly a case in which the rule just quoted should be applied. If the temporary injunction shall not be granted, and if the preliminary injunction contained

in the order to show cause should be dissolved, this plaintiff would, until the final determination of this action, be deprived of the opportunity of offering for sale the morning and evening newspapers published in the city of New York, and his business would suffer very material injury, if it would not be utterly ruined. No rights of any of the defendants, except the Star Company, can be affected by the granting of the motion. On the contrary, if it shall be granted, the other defendants will be assured of at least one customer for their publications of whom they would, by their own combined acts, be deprived should the motion not be granted. The defendant Star Company would not suffer because the plaintiff now refuses and since last August has refused to purchase its publications.

The motion will, therefore, be granted, with costs. and the injunction *pendente lite* prayed for will be issued.

Motion granted.