JOSEPH SKOLNY and LEO SKOLNY, Copartners Doing Business under the Firm Name and Style of Jos. SKOLNY & Co., Plaintiffs, *v.* SIDNEY HILLMAN, Individually and as General President of the Amalgamated Clothing Workers of America, an Unincorporated Association, et al., Defendants.

(Supreme Court, New York Special ·Term, March, 1921.)

Membership associations — action against — Code Civ. Pro. §§ 1919, 1923 — sufficiency of complaint — injunction pendente lite granted — labor dispute.

By section 1919 of the Code of Civil Procedure a simple method is provided by permitting an action to be maintained against either the president or treasurer of an unincorporated membership association, to bring the entire membership before the court, and if that simple mode is not preferred, section 1923 of the Code of Civil Procedure preserves the common law right of suing all the members.   (P. 576.)

While the practice of suing one member, both individually and as president, and another member individually and as assistant general secretary, cannot be sanctioned, the complaint will not be condemned if in fact a cause of action was alleged against the president.   (Id.)

Supreme Court, March, 1921. [Vol. 114.

Where the complaint, in an action brought against the president and assistant general secretary of the "Amalgamated Clothing Workers of America," an unincorporated membership association having an approximate membership of 175,000 workers in the clothing trades, alleges that the defendants combined to do the injurious acts arising out of labor troubles of which plaintiff, a clothing manufacturer, complains, such allegations mean and charge all the members and they are all liable. (Pp. 577, 578.)

The complaint and affidavits on motion for an injunction *pendente lite* considered and defendant's motion for judgment on the pleadings denied and the injunction granted.

*People* v. *Melvin*, 1 Yates Sel. Cas. 81, followed. (P. 580.)

ACTION for an injunction.

Gordon, Tally & Gordon (Harry A. Gordon, of counsel), for plaintiffs.

Lowenthal & Szold (Samuel Seabury, of counsel), for defendants.

ERLANGER, J. Plaintiff brought this action against Sidney Hillman, individually and as general president of the Amalgamated Clothing Workers of America, an unincorporated association, and against Jacob S. Potofsky, individually and as assistant general secretary of the said association. Many other parties are joined as defendants in the summons and caption of the complaint, but the two persons mentioned alone were served and the action is being prosecuted solely against them up to this time. A brief synopsis of the material facts alleged in the complaint follows: Plaintiffs are manufacturers of men's and boys' clothing; their principal place of business is in the borough of Manhattan; they operate factories in both of the boroughs of Manhattan and Brooklyn; their annual output is approximately $3,000,000; that the Amalgamated Clothing Workers of America is an unincorpo-

rated membership association with an approximate membership of 175,000 and is an association of workers in the clothing trades in, among other cities, the city of New York and has its principal office in the borough of Manhattan; that said association of workers according to its constitution is governed, managed and controlled by a general executive board consisting of eleven members, of whom three are the general president, general secretary, and financial secretary, and eight are the general executive board members; that by its constitution it was at all the times hereinafter mentioned, and still is provided that the general executive board shall have the right, power and authority to call and authorize strikes and to direct and declare boycotts; that at the times hereafter mentioned the individual members of the Amalgamated Clothing Workers of America were and still are members of certain local unions of said defendant, authorized, created and constituted by said defendant and composed of workers in certain branches of the clothing industry in the United States and particularly in the city of New York; that in the city of New York and for the purpose of a more complete control and management of the business of said Amalgamated Clothing Workers it has created and authorized the formation of a joint board; that the various local unions in the city of New York elect and select representatives upon said board in said city and that said board has, subject to the review and control by the general executive board of the Amalgamated Clothing Workers, jurisdiction of all matters and things affecting the defendant Amalgamated Clothing Workers and of the members thereof employed and working in the city of New York, etc. On January 27, 1921, plaintiff entered into contracts with certain persons who agreed to work for them in certain capacities from

week to week and such employment was upon the express understanding that such employees had ceased to be affiliated with the defendant Amalgamated Clothing Workers of America (if they were so affiliated) or with any other union, and that they would not join the said association or any other union while in plaintiff's employ nor make any effort to bring about the unionizing of plaintiff's employees. That under the terms of this agreement which was in writing, the various persons signatory to the same entered upon their employment, of which fact the association had due notice. That in violation of the contract rights of plaintiff and contrary to the terms of said contracts of employment, and without any complaint, grievance or dispute among said employees and with the intent and purpose solely of preventing the plaintiffs from doing any business and of ruining the plaintiffs' said business and bringing about disorder therein and chaos into the community, the members of the Amalgamated Clothing Workers of America prior to the commencement of this action unlawfully and maliciously agreed together, confederated and combined and formed themselves into a conspiracy, the purpose of which they are proceeding to carry out, to cause plaintiffs' factory to be shut down, their plant to remain idle, their contracts to be broken and unfulfilled until such time as plaintiffs shall submit to the demand of said Amalgamated Workers to unionize their factory and by employing workers who shall be members of and subject to the orders of said association and in furtherance of said conspiracy and unlawful combination are wrongfully and unlawfully instigating plaintiffs' employees to cease working for plaintiffs and to join said association in the accomplishment of the aforesaid purposes. That the members of said association have caused, sanctioned and directed and are

conducting a strike against plaintiffs and their factory and the members of said association have been and still are wrongfully and unlawfully instigating persons to become engaged in the practice of picketing plaintiff's factory and to congregate about the premises coercing, threatening, assaulting, intimidating, halting and turning aside against their will those who would go to and from plaintiffs' place of business and those who are working under the contracts referred to and those who would seek work with plaintiffs and have been and are enticing employees under contract with plaintiffs to desert their employment and to breach their contracts and join said association and hampering and hindering the free dispatch of plaintiffs' business. That plaintiffs have invested a large amount of money in their business, which is being jeopardized and that unless defendants are restrained the defendants will continue in the aforesaid acts to plaintiffs' irreparable injury and damage. That plaintiffs have no adequate remedy at law. An injunction is prayed for that the acts of the defendants be decreed to be a common law conspiracy and in unreasonable restraint of trade and a conspiracy against the rights of non-union workers. That the acts mentioned in the prayer of the complaint be restrained, etc. The two defendants served by their answers specifically deny the acts charged against them and the Amalgamated Clothing Workers. They also move for judgment on the pleadings. The plainiffs move for an injunction *pendente lite*. These will be considered in their order. Two objections are urged which it is contended are fatal to the plaintiffs' cause. The first is directed to the violation of the section of the Code which permits actions to be brought against unincorporated associations, and under the second, it is claimed that the complaint is

insufficient because it fails to allege facts showing liability of all the membership, consisting of 175,000, of the Amalgamated Clothing Workers. It is argued under the first that an unincorporated association is not a legal entity and cannot be sued apart from its membership; that all rights against it must be enforced against all its members, and similarly all rights in its favor must be sought by all. 5 C. J. 1365, § 102. To obviate the difficulties in that regard, section 1919 of the Code was enacted, and by that section a simple method is provided by permitting an action to be maintained against either the president or treasurer to bring the entire membership before the court. Both cannot be sued, the disjunctive *or* particularly excludes that idea — a choice is given to select one of the two or if that simple mode is not preferred, section 1923 of the Code preserves the common-law right of suing all. The plaintiffs did not proceed in strict conformity to section 1919 of the Code. They sued Hillman individually as well as president — and Potofsky individually and as assistant general secretary, and then as shown other officers and agents of the association were attempted to be joined. This procedure is not sanctioned. *Schmidt* v. *Gunther,* 5 Daly, 452-453. But I do not think because of the practice followed that the complaint should be condemned if in fact a cause of action is alleged against the president. The same question arose in *Rourke* v. *Elk Drug Co.,* 75 App. Div. 145, and it was there held that such procedure was not fatal. At the appropriate time application can be made to the Special Term to strike from the summons and complaint the unnecessary parties and ample authority is to be found for such action. *Boyd* v. *United States Mortgage & Trust Co.,* 187 N. Y. 262; *Johnson* v. *Phœnix Bridge Co.,* 197 id. 316; *Helling* v. *Boss,* 121

N. Y. Supp. 1013. We come now to the second ground which attacks the legal sufficiency of the complaint. Many cases are cited in support of the point thus urged. It is argued that the test of sufficiency to be applied is, does the complaint allege that all of the 175,000 members are liable either jointly or severally for the acts charged or jointly liable because of the acts of agents duly constituted and appointed? Counsel for defendant asserts it does not and it is also maintained that not only must liability of all be alleged but proof thereof is a *sine qui non* for success upon the trial. In other words, unless it is alleged and can be established upon the trial that this large number of members are each individually liable because of what each did, authorized or ratified, no cause of action exists. In my opinion the 15th paragraph of the complaint covers the point, and *Hitchman Coal & Coke Co.* v. *Mitchell* (245 U. S. 229) decided by the Supreme Court of the United States is decisive on that detail. The court, through Mr. Justice Pitney, there said: " When any number of persons associate themselves together in the prosecution of a common plan or enterprise lawful or unlawful, from the very act of association *there arises a kind of partnership, each member being constituted the agent of all,* so that the act or declaration of one in furtherance of the common object is the act of all and is admissible as primary and original evidence against all." (Italics mine.) This pronouncement of the court when read in the light of the charges made in the complaint justifies the form in which the wrong is alleged and renders the complaint immune from attack for the grounds insisted upon. Pleadings are to be liberally construed. The tendency of the courts is to get away from the technical rules which have fettered justice. The allegations of the wrongs are

37

alleged in general terms. When it is charged that the defendants combined to do the acts of injury complained of, it means all and charges all; and all are liable within the authorities. In the last analysis do the papers show grounds for the injunction? At one time denial of the equities of the bill defeated the application for such relief. That time is gone. Acts which amount to a crime are not usually admitted. Courts look into the merits of the motion. It is now the rule that only a *prima facie* case need be made, and if the court can spell from the papers that that has been shown, it has been held to be enough. *Sultan* v. *Star Co., Inc.,* 106 Misc. Rep. 43; *Lawrence* v. *Lawrence,* 172 N. Y. Supp. 146. The plaintiffs claim that they have established an open shop; that employment in their factories depends upon an agreement in writing from week to week with their employees; that they have ceased to be affiliated with any union; that they will not join any union while so employed, and that they will abstain from all efforts to bring about the unionizing of plaintiffs' employees. Such are the conditions of the employment and those conditions the signatories to the agreement have obligated themselves voluntarily to abide by. This form of agreement has been upheld in *Hitchman Coal & Coke Co.* v. *Mitchell, supra.* The affidavits presented by plaintiffs support the charges alleged in the complaint. The defendants deny the charges, not all, but most of them. Some denials, those referring to the charge of assault, are made by affiants who were not present and could have no knowledge on the subject. But it is admitted by one of the pickets that " whenever they think that some one is a prospective employee of the firm they go to him quietly and merely inform such person that there is a lock out." It is quite impossible to quote from all the affidavits submitted *pro* and *con.* Plain-

Misc.]          Supreme Court, March, 1921.

tiffs claim that their troubles resulted from a strike of
their employees. The defendants assert there was a
lock out against them and what they are doing is
entirely within their rights. They attack the form of
plaintiffs' contract and insist they are invalid
because no definite time is fixed and the employee can
be discharged at any moment. That they are invalid
for lack of consideration; that there is no evidence of
an intent to procure a breach of them; that their
picketing is lawful; that they have a right to com-
bine to strike and to persuade others to join them to
improve their economic condition; that they had no
notice of plaintiffs' contract, etc. It is clearly estab-
lished that picketing is lawful — that a man may work
or not as he shall choose; that he may strike with
others and peaceably seek others to join. But it is
equally well settled that a worker may work where-
soever it pleases him; that he may labor and provide
for himself and family without being subjected to the
danger of assault or threat of bodily harm; that he
cannot be compelled to join a union if he is not dis-
posed so to do; that employees may not be enticed
from their employment by threats or otherwise; that
the right to live and let live is a God given right to be
observed by all, and that all rights, whether of great
or lesser magnitude, will be protected by the courts
which the people have created for the common pro-
tection of all. Intimidation does not necessarily
carry with it an act of violence. The application of
the term " scab," the use of insulting epithets, the
fear of going back and forth from the workshop, the
visitations at the homes of workers and threatening
them if they did not quit working for plaintiffs, that
the union would see to it if they won the strike that
they would never again get employment in the cloth-
ing trade and the like has been found effective. It is

a silent weapon but carries with it a menacing atti-
tude. *Michaels* v. *Hillman,* 112 Misc. Rep. 395. Par-
ties placed in the position of plaintiffs and their work-
men are not obliged to resort to criminal proceedings
for protection against unlawful combinations or con-
spiracies. Under modern decisions courts of equity
are more apt to restore order and confidence than
doubtful results in a criminal court. *Heitkamper* v.
*Hoffmann,* 99 Misc. Rep. 543-546. The differences that
exist between capital and labor are not of recent origin.
Dug from among the *causes celebres* of an almost for-
gotten age the *Journeymen Cordwainers* case is a liv-
ing example. The case is entitled *People of the State
of New York* v. *Melvin,* 1 Yates Sel. Cas. 81. In that
case a number of workmen were indicted in 1809 for
conspiracy. The first count of the indictment states
that the defendants being workmen and journeymen
in the art, mystery and manual occupation of cord-
wainers, on the 18th of October, 1809, etc., "unlaw-
fully, perniciously and deceitfully designing and
intending to form and unite themselves into an unlaw-
ful club and combination, and to make and ordain
unlawful by-laws, rules and orders among themselves,
and thereby to govern themselves and other work-
men in the said art, and unlawfully and unjustly
to extort great sums of money by means thereof,
on the day and year aforesaid, with force and
arms, at etc., together with divers other workmen
and journeymen in the same art, etc., * * * did
unlawfully assemble and meet together, and being so,
etc., did then and there, unjustly and corruptly con-
spire, combine, and confederate and agree together,
that none of them, the said conspirators, after the
said 18th October, would work for any master or per-
son whatsoever, in the said art, mystery and occupa-
tion, who should employ any workmen or journey-

men, or other person in the said art, not being a member of said club or combination, after notice given, etc., to discharge such workmen, etc., from the employ of such master," etc. Article VIII of their constitution reads as follows: "No member of this Society shall work for an employer, that has any journeymen cordwainer, or his apprentice in his employment that do not belong to this Society, unless the journeymen come and join the same; and should any member work on the seat with any person or persons that has not joined this Society, and do not report the same to the President, the first meeting night after it comes to his knowledge, shall pay a fine of $1.00." Article IX, "If any employer should reduce his journeymen's wages at any time, or should the said journeymen find himself otherwise aggrieved, by reporting the same to the Committee at their next meeting, they shall lay the case before the Society who shall determine on what measures to take to redress the same." Article XVII fixes the wage of the journeymen in the city of New York. The case was sent to the jury who found the defendants guilty and thereupon they were fined one dollar each with costs. Many of the acts in the cited case bear a strong resemblance to those complained of in the instant case, and were treated and punished as a common law conspiracy. Though infrequently cited, so far as I have been able to discover, it is still authority and has been given approval in *Davis* v. *Zimmerman,* 91 Hun, 492, and in *New York Central Iron Works Co.* v. *Brennan,* 105 N. Y. Supp. 865–869. My conclusion is that the motion for judgment on the pleadings must be denied, with ten dollars costs. That under all the authorities upon the facts, the motion for an injunction *pendente lite* should be granted.

Ordered accordingly.