CHARLES A. FINNEGAN, Plaintiff, v. EDWARD H. BUTLER et al., Defendants.

(Supreme Court, Erie Special Term, June, 1920.)

Injunctions — when plaintiff will be granted an injunction pendente lite — actions — newspapers.

A prayer for a general injunction, without specifying particular acts sought to be restrained, will not be granted. (P. 286.)

In an action by the proprietor and publisher of the Buffalo *Commercial* to restrain the defendants, who are the proprietors and managers of all the other daily newspapers in the city of Buffalo published in the English language, from refusing to sell their newspapers to persons who may deal in and handle plaintiff's newspaper and from inducing news boys or news men to refuse to handle or deal in plaintiff's newspaper, the plaintiff will be granted an injunction *pendente lite*.

MOTION for an injunction *pendente lite*.

Franklin R. Brown, for plaintiff.

Preston M. Albro, for defendant Butler.

Daniel J. Kenefick, for defendant Mack.

Edward R. O'Malley, for defendants Conners.

William C. Carroll, for defendants J. H. Matthews
Company and Ramsdell.

SEARS, J. The plaintiff has moved for an injunction
*pendente lite.* He is the proprietor of a daily evening
newspaper known as the Buffalo *Commercial,* and the
defendants are the proprietors and managers of all
the other daily newspapers in the city of Buffalo pub-
lished in the English language. The plaintiff's action
is for injunctive relief, and is based upon the theory
that the defendants, together with others, have con-
spired together to injure the business of the plaintiff
as publisher of the Buffalo *Commercial.*

The acts sought to be enjoined may be summarized
as follows:

(1) Refusing to sell the defendants' newspapers to
persons who may also deal in and handle plaintiff's
newspaper, and inducing news boys or news men to
refuse to handle or deal in plaintiff's newspaper.

(2) Refusing to deliver " mats " or " matrices "
of advertisements to plaintiffs when requested so to
do by the advertiser for the preparation or publication
of whose advertisement such " mat " or " matrix "
has been made.

(3) Continuing the practice of employing men to
reset " mats " or " matrices," and entering into an
agreement with any labor union, corporation, asso-
ciation or person to provide for employees to be
engaged in such resetting of " mats."

(4) Entering into any agreement with any labor
union, corporation, association or person providing
that defendants shall employ only union men or dis-

charge any employees not belonging to such union or association.

(5) Combining and conspiring to create or maintain a combination or monopoly in the production or sale of newspapers, advertising therein, " mats " or " matrices," or whereby competition in this state in the supply or price of any such article or commodity, or any article or commodity in common use, is or may be restrained or prevented, or whereby or as a result of which the free pursuit by plaintiff of his lawful business of publishing, circulating and selling the Buffalo *Commercial* may be restricted or prevented, or whereby the plaintiff may be prevented from exercising his lawful calling, or to commit any act injurious to trade or commerce, or whereby it is intended to accomplish any of the acts or things mentioned in the above subdivisions.

Before a temporary injunction can be granted the court must be satisfied that the plaintiff has shown in the motion papers at least a *prima facie* case, *first,* that a combination exists; *second,* that it tends to create a monopoly in an article or commodity of common use, or is intended to injure the plaintiff in his business; *third,* that the acts complained of will cause the plaintiff injury.

The defendants earnestly contend that the case fails to establish any one of the three elements mentioned above. The plaintiff's affidavits fail to establish direct proof of any contract or agreement which would constitute necessarily a combination or conspiracy. But these facts are shown: For a long time there has been an association known as the " Buffalo Publishers Association;" that previous to January 12, 1920, there were meetings of this association at which the price of newspapers was discussed; that previously to that time the price of all daily newspapers in the city of

Buffalo, except the price of the Buffalo *Commercial*, was simultaneously increased to two cents; that employees of some of the defendants have stated to newsdealers that such newsdealers would not be supplied with any of the defendants' papers if they handled or continued to handle the Buffalo *Commercial*. Such facts establish a *prima facie* case of a combination or conspiracy. Such a conspiracy may be established circumstantially. The Appellate Division of the fourth department in *Heughes* v. *Board of Education*, 37 App. Div. 180, said: " Direct and positive proof of such an offense is, from the nature of things, seldom attainable, and for this reason resort is frequently had in both civil and criminal actions to circumstantial evidence, that is, to evidence of disconnected acts on the part of the individual conspirators which, when taken in connection with each other, tend to show a combination to secure a particular result; and this character of evidence is often quite as satisfactory and conclusive as more direct proof. (*People* v. *Flack*, 125 N. Y. 324; *People* v. *Van Tassel*, 156 id. 561.) "

The defendants upon the argument conceded that it would be unlawful for the defendants to combine to prevent newsdealers or newsboys from selling the Buffalo *Commercial* by offering them money considerations. It would be equally unlawful to accomplish the same purpose by threatening to refuse to sell the defendants' newspapers to newsdealers handling the *Commercial*. *Sultan* v. *Star Company*, 106 Misc. Rep. 55; *Straus* v. *American Publishers' Association*, 85 App. Div. 449; 177 N. Y. 477.

The defendants deny these coercive acts and produce affidavits of their employees who are charged with the commission of such acts to substantiate their denials. On this preliminary motion this question of fact is not necessarily resolved. It is sufficient in

the discretion of the court to prevent irreparable injury to grant relief upon the *prima facie* case. Especially should that be so as here where the acts are denied, and no harm will, therefore, result to the defendants in their being enjoined. An injunction *pendente lite* will, therefore, be ordered restraining the defendants from the commission of the acts specified in subdivision 1 of the acts complained of, above mentioned, viz.: Refusing to sell the defendants' newspapers to persons who may also deal in and handle plaintiff's newspaper, and inducing newsboys or newsmen to refuse to handle or deal in plaintiff's newspaper.

As to the other acts complained of, a different situation exists. For example, the defendants are charged with refusing to supply '' mats '' or '' matrices '' to advertisers if such advertisers in turn are to furnish such '' mats '' or '' matrices '' for the use of the Buffalo *Commercial*. These '' mats '' or '' matrices '' are made as follows: An advertiser sends to the newspaper a copy of a display advertisement. The newspaper to which the copy is sent causes the copy to be set by the use of movable type. An impression of this movable type is made upon a wet paper mass, which is pressed into the type and takes the exact impression thereof. This paper mass constitutes the '' mat '' or '' matrix,'' and more than one impression can easily be taken. The '' mat '' is thoroughly dried in a cylindrical form and molten metal poured upon the same, which, although cylindrical in form, takes the exact impression of the type in a solid mass in such a condition as to be usable upon a cylindrical press. Such '' mat '' or '' matrix '' is, therefore, an intermediate process in the production of the newspaper between the setting of the type and the final casting of the cylinder which is put into the press.

Mats are not sold, but newspapers do as a courtesy frequently make extra mats and deliver them to other newspapers. The mat is not a commodity of common use within the meaning of the Donnelly Act, section 340 of the General Business Law of the state of New York. *People* v. *Epstean,* 102 Misc. Rep. 476. It would doubtless be convenient and advantageous to the *Commercial* to receive from the defendants such '' mats,'' but the plaintiff has established no legal right to do so. The courtesies of the past do not establish such rights. The '' mats '' do not belong to the advertisers, and even if they did it would be the advertiser who would have to complain and not the plaintiff. There is no more reason why the defendant should make additional mats to be supplied to the *Commercial* than that the plaintiff should be furnished with copies of the defendants' news article for republication in the plaintiff's newspaper. No act tending to injure the plaintiff in a legal sense is established in this respect.

Similarly in regard to the relief sought in respect to the use of printers in resetting advertisements, and in respect to the relief sought regarding the entrance into contracts with labor unions for the employment exclusively of members of such labor unions, there is a failure to establish either the creation of a monopoly or an intent to injure the plaintiff or an actual injury to the plaintiff.

It would be irrelevant to discuss the arguments relating to trade union limitation of work or the '' closed shop.'' So far as this motion is concerned these subjects may be considered as social and economic. They may in a proper case become legal. The argument that the defendants are employing men in useless work, and, therefore, restricting the labor market to the injury of the plaintiff, does not convince me that there is a direct injury to the plaintiff.

In *Auburn Draying Company* v. *Wardell*, 227 N. Y. 1, 7, a secondary boycott was involved, the injunction being " ' to prohibit the enforcement of resolutions, rules or orders of the defendant unions requiring their members to quit the service of employers who patronize the plaintiff, and the giving of notices by or on behalf of said organizations or the officers thereof to such employers, or the public, of an intention to quit provided such employers continued to patronize the plaintiff, and any other attempt or effort to use the powers or authority of the defendant unions over their own members for the purpose of inducing or compelling patrons of the plaintiff, or the public generally, against their will, to refrain from dealing with the plaintiff.' " In *Straus* v. *American Publishers Association*, 177 N. Y. 473, the plaintiffs were the proprietors of a department store dealing in books complaining of an association which had entered into an agreement not to sell books to any book seller who should not maintain a certain net retail price. In *Curran* v. *Galen*, 152 N. Y. 33, the plaintiff was an engineer who complained of the action of a trade union which secured his discharge because he was not a member of the union. In *McCord* v. *Thompson-Starrett Company*, 129 App. Div. 130; affd., 198 N. Y. 587, the question arose among the members of an employers' association as to the legality of a requirement of the association that all its members should employ or continue to retain in employment only members of a particular union. The case is therefore an authority holding that such an order by an employers' association is illegal, but it does not establish the right of the plaintiff to base an action upon a theory of such remote and consequential damages as the plaintiff alleges here.

The prayer for a general injunction without specifying particular acts can not be granted. It would be

as futile as an injunction against general disobedience of the law.

The motion for a temporary injunction is, therefore, granted only as above stated and in all other respects is denied.

Ordered accordingly.