J. Radley Metzger Co., Inc., Respondent, *v.* Charles Fay, as President of Local 485 of the International Union of Electrical Radio and Machine Workers, et al., Appellants.

First Department, September 17, 1957.

*Irving Abramson* of counsel (*Everett E. Lewis* and *Melvin Warshaw* with him on the brief; *Irving Abramson,* attorney), for appellants.

*Samuel Gottlieb* of counsel (*Harry Giesow* with him on the brief; *Gainsburg, Gottlieb, Levitan & Cole,* attorneys), for respondent.

*Per Curiam.* Defendants appeal from an order granting a temporary injunction restraining them from picketing plaintiff's premises, and denying defendants' cross motion to dismiss the complaint for insufficiency.

Plaintiff operates a plastic manufacturing company employing approximately 65 to 70 employees. In April, 1953, plaintiff entered into a collective agreement with Local 229 of the United Textile Workers of America (hereinafter called " Local 229 ") as a representative of all of its employees. That agreement was extended on December 12, 1956 for a period ending October 1, 1958.

It appears that in August, 1957 press reports of testimony given before a United States Senate Committee conducting hearings on improper labor practices indicated that officers of Local 229 had been involved in the consummation of so-called

" sweetheart contracts " with employers. Immediately thereafter plaintiff's employees joined the defendant union, Local 485 of the International Union of Electric Radio and Machine Workers (hereinafter called "Local 485"). On August 21, defendants began picketing plaintiff's place of business carrying signs reading: "On strike for clean unionism." The order appealed from has called a halt to such picketing *pendente lite.*

The Judge at Special Term concluded that the controversy herein presented "a struggle between two rival unions for the privilege of representing plaintiff's employees." If that be the case, then in view of an existing agreement with Local 229, the picketing would have an unlawful objective, and no "labor dispute" would be involved preventing the issuance of an injunction. (See *Wood* v. *O'Grady,* 307 N. Y. 532; *Goodwins, Inc.,* v. *Hagedorn,* 303 N. Y. 300.)

But defendants disclaim that this is a conflict engendered by mere rivalry between unions. They aver that plaintiff, in collusion with Local 229 had entered into a "sweetheart contract" which ignored the legitimate rights and interests of the employees and had for its sole purpose the subjugation and exploitation of the employees. Plaintiff vehemently denies any participation in a collusive "sweetheart contract".

There is a presumption of validity and legality which attaches to the contract between plaintiff and Local 229. Defendants contend that the averments of their affidavits have completely destroyed any foundation for continued recognition of that presumption in this case.

We believe that the controverted assertions in defendants' affidavits directed towards that end cannot be evaluated effectively at this stage of the action; and that the truth or falsity of the charges can only be determined after a full development of the facts upon a trial.

The charge is levelled against plaintiff of committing unfair labor practices, making the strike in plaintiff's plant one for a lawful objective. The courts are without jurisdiction to adjudicate unfair labor practices. Nor may we, on affidavits alone, deprive plaintiff of relief on any theory of coming into court without "clean hands". The case of *Mastro Plastics Corp.* v. *Labor Bd.* (350 U. S. 270) relied on by defendants is of no material assistance, since there the decision was rendered after full hearings and the making of detailed findings on the charges.

The denial of Local 485 of any present intention to be recognized as the bargaining representative of the striking employees must be weighed with the admission that the employees have

become members of that union. We must look to the substance rather than the form, and cannot permit to be done indirectly what would not be permissible directly. Indeed the court below was being realistic when it characterized the conflict as "a struggle between two rival unions".

In the meantime, plaintiff finds itself in an anomalous position. Local 229, with which plaintiff is in contractual relationship, is charged with being dominated by unsavory elements who do not have the best interests of the employees at heart; and the employees are picketing to demand a clean-up of the union. Perched between Scylla and Charybdis, the employer, if it accedes to the demands of the pickets and summarily repudiates the contract with Local 229, will be met with picketing ordered by that Local; while if it continues to abide by the agreement, until some court or board relieves it of the obligation, it must suffer the consequence of the picketing which has been temporarily enjoined by the court below.

Of course, if plaintiff ultimately is shown to have fostered a collusive "sweetheart contract" with Local 229, its complaints about any predicament will be unavailing. All we decide now is that on the present state of the record there is insufficient to establish the alleged collusive arrangement and to overcome the presumption of validity that attaches to the agreement. We interpose our mandate merely to maintain the *status quo* until a final determination of the issues.

There is a discretionary power in the courts to enjoin a threatened wrong where, as here, ultimate relief would be completely ineffectual if plaintiff's business is destroyed while the cause awaits trial. In balancing the equities, it is clear that the irreparable harm which plaintiff will suffer is not commensurate with the inconvenience to defendants which a temporary restraining order will cause. On the argument of the appeal, plaintiff's counsel offered to go to trial immediately so that the issues could speedily be determined. That offer was not readily accepted.

Appellants challenge the jurisdiction of the court to enjoin the picketing on the ground that the Labor Management Relations Act, 1947 (U. S. Code, tit. 29, § 141 *et seq.*) has pre-empted the field of labor relations affecting interstate commerce. In view of the existence of a collective agreement, presumptively valid, we have held that on the present state of the record we are not prepared to rule that the picketing here has a lawful objective, and accordingly are permitting the injunction *pendente lite* to stand. There can no longer be any doubt about the power of a State court to enjoin picketing under circumstances

where its Legislature or courts have adopted a public policy directed against picketing for unlawful objectives. The decision in *Teamsters Union* v. *Vogt, Inc.* (354 U. S. 284) makes this indisputably clear. In effectuating its own public policy, the courts do not intrench upon the pre-empted field of labor relations provided for in the Taft-Hartley Act.

On the present state of this record, we find that the court below properly exercised its discretion in granting the temporary injunction.

The order below should be affirmed.

The parties may settle an order providing for an immediate trial if the defendants so stipulate.

PECK, P. J., RABIN, FRANK, VALENTE and McNALLY, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondent. Parties may settle an order providing for an immediate trial if the defendants so stipulate.

[See *post,* p. 861.]