Domenick L. Gabrielli, J.
The plaintiffs have brought suit for a permanent injunction asking that certain actions and proceedings of the Board of Education be restrained and enjoined. In addition, the plaintiffs seek a declaration that a local law adopted by the defendant City of Rochester be declared illegal, invalid and unconstitutional.
This present proceeding is an application for a preliminary injunction against the Board of Education to restrain this body from refusing to enroll and register certain students pending thi ' " "n the main action.
Prior to 1992, students districts in Towns oof jDngnton auu ureece, as denominated in the complaint, attended schools within the districts then located in these two towns. Efforts by various interested parties within the affected towns and the City of Rochester, resulted in the annexation of substantial territories by the City of Rochester, by chapter 547 of the Laws of 1918 and chapter 519 of the Laws of 1922. These enactments prescribed and redefined the boundaries of the City School District and the city provided for the annexations and, as part of the transfer, the city acquired (1) all of the school facilities, (2) school funds, (3) school buildings, (4) school properties, and (5) records, etc. of said districts. school districts in the Towns
In turn, the same annexing statute provided that the children residing within the affected school districts would be allowed to attend schools within the city without the payment of tuition.
As a result of this arrangement, school children from these school districts have been attending schools in the city for at least 44 years, without intervention and pursuant to the legislative enactment of the State Legislature; and, as is evidenced by the enactment itself, this amendment was ‘ ‘ accepted ’ ’ and agreed to, by the city. The city now seeks to alter the arrangement by charging tuition, to all children residing in the plaintiff school districtsi as follows: For each kindergarten student, *763 $200; for each student in grades 1 through 6, $500; and $600 for each student in grades 7 through 12.
By local law to become effective September 1, 1964, the defendant city has completely altered the ‘ ‘ arrangement ’ ’ and amended chapter 755 of the Laws of 1907 to the extent that, from and after September 1, 1964 students from the affected school districts would be accepted by the defendants provided they paid the tuition charges hereinabove set forth.
Prior to the commencement of this action, the defendants announced that this policy would be strictly adhered to in the present registration of students and, at the time of the argument of this matter, students from the affected districts had been refused enrollment and registration unless tuition was paid by the registering parents.
It further appears and is conceded by all that the controversy before the courts involves more than 800 pupils. The court was further advised that the city has, over these years, been receiving State aid based on the attendance of children in the city schools from the affected school districts in these two towns. In addition, it further appears that, in reliance upon the provisions of the legislative enactment and agreed to and acquiesced in by the city, there are and have been no public schools in any of the free tuition areas in the affected districts and the plaintiffs assert, therefore, that as a practical matter, there is no place for these children to attend school except in the schools where they have been attending for many years.
It has been further pointed out that prior to the institution of this suit and the argument of this motion, the defendant Board of Education, with knowledge of the facts that there were no facilities in the affected area, directed that two of its schools be closed with the statement that these pupils would not or could not attend during the next school year.
The defendants assert that the parents of the children in the affected area had ample notice that the defendants were about to take the complained-of action; and point to the fact that the local law under attack was adopted on May 14, 1963. The plaintiffs, on the other hand, assert that they were in no position to take any affirmative action until there was some overt act upon the part of the Board of Education, or that there was imminent danger that such action was about to be adopted.
It is upon these basic tenets and facts that the plaintiffs seek a preliminary injunction to maintain the status quo pending a final determination of the action.
*764 The papers which include the summons and complaint, the affidavits on behalf of the plaintiff, and defendant, as well as the answer have been carefully examined by the court. There are no disputed questions of fact. All of the necessary elements which would entitle the plaintiffs to a preliminary injunction are present.
The plaintiffs have clearly and fully demonstrated that not only will there be irreparable damage caused, but also that there exists a clear legal right to the relief presently sought.
When the threatened acts, if continued and accomplished, would render any decision of the court academic to the irreparable damage of plaintiffs and the affected children and of inconsequential damage to defendants, a preliminary injunction is a matter for the exercise of sound discretion. This is particularly so when the threatened acts are precipitous and involve conduct and operations as to which there has been a mutuality of understanding for so many years. ('See Tonawanda Bd. & Paper Co. v. City of Tonawanda, 198 App. Div. 760.)
The purpose of a preliminary injunction is to maintain the status qtoo until the action has been finally determined and is merely to prevent further perpetration of an alleged wrong until a full and deliberate investigation of the case can be had, without in any manner determining the question of the right to a permanent injunction, or indicating any opinion on that subject. (International Ry. Co. v. Barone, 246 App. Div. 450.)
The granting of a preliminary injunction does not determine the ultimate issues in the action, but serves only to preserve the status quo until a decision on the merits. (Weisner v. 791 Park Ave. Corp., 7 A D 2d 75, 78; Walker Mem. Baptist Church v. Saunders, 285. N. Y. 462, 474 ; 43 C. J. S., Injunctions, § 200 ; Ann. 32 A. L. R. 894.) (See, also, Sullivan v. McFetridge, 55 N. Y. S. 2d 511; Crummey v. Murray, 130 Misc. 378; Grand Lodge Knights of Pythias v. Supreme Lodge, 112 N. Y. S. 2d 61; Finnegan v. Butler, 112 Misc. 280.) No harm can be done if the status quo is maintained, whereas irreparable injury may perhaps result if the requested relief is denied. The situation clearly calls for judicial intervention.
The arrangement which plaintiffs seek to have continued (and contrary action temporarily restrained) has been in continuous operation for nearly 45 years. The defendants have suggested that the application for a preliminary injunction be denied and that the parents of the children in the affected area pay the contemplated tuition charges, and, if the local law is ultimately declared to be invalid, the money would be refunded. This would constitute unreasonable, burdensome and unnecessary *765 conditions and tasks upon several hundred children. It is well to here note that there is every likelihood that the main action, which is in the process of being submitted for ultimate determination by the court as a matter of law, will be concluded in the very near future.
Where it appears that a case has been made out for the exercise of the court’s sound discretion, it has been held that, in determining whether a preliminary injunction should issue, the court should consider the probabilities of hardship to each of the parties and weigh them in the balance (Matter of Offen, 45 N. Y. S. 2d 348); and where, in balancing the equities, it is clear that the irreparable harm which the plaintiffs, and the affected children, will suffer is not commensurate with the damage to or inconvenience of the defendants, the issuance of a preliminary injunction is justified. (Metzger Co. v. Fay, 4 AD 2d 436; see, also, Belmont Quadrangle Drilling Corp. v. Galek, 137 Misc. 637 and Pepsi-Cola Co. v. Billy Rose Exposition Spectacles, 14 N. Y. S. 2d 301.)
In the exercise of discretion, the court is constrained to grant the relief herein sought. Justice and equity will be best served if the status quo be maintained until a final determination of the main action.